SALT LAKE CITY ET AL., APPELLANTS, *v.* JOSEPH H. COLLADGE ET AL., RESPONDENTS.

REVIEW ON APPEAL—FINDING OF FACTS—CONSTRUCTION OF CONTRACT.

1. Where the finding of facts on a material issue is clearly in contravention of the preponderance of evidence, and is so manifestly erroneous as to amount to an oversight or inadvertence on the part of the court, the facts so found and the decree entered thereon may be modified by the supreme court, so as to conform to the weight of evidence.

2. Where, by contract, a commission is to be appointed, and the members thereof are constituted the agents of both parties thereto, for the purpose of carrying out certain provisions of the contract, the appellate court, in construing such provisions, will not adopt an interpretation which is neither warranted by the language in the contract, nor by the purpose and object for which the commission was created; and, where there is nothing to warrant the construction adopted by the trial court, the appellate court has power to modify such construction, and to require a decree to be entered in conformity with such modification.

(No. 699. Decided July 1, 1896. 45 P. R. 891.)

Appeal from the district court of the First judicial district, Territory of Utah. Hon. W. H. King, *Judge.*

Action by Salt Lake City *et al.* against Joseph Colladge *et al.* to establish the right of plaintiffs to maintain the waters of Utah Lake at certain levels, and to restrain defendants from bringing action against plaintiffs for damage done to lands flooded on the shores of Utah Lake.

*Richards & Richards* and *William McKay*, for appellants.

The decree does not conform to the facts found, and the evidence is insufficient to support it. This court has the right to make the decree conform to the findings of fact, and should render such a decree as the court below ought to have rendered. *Wickliffe* v. *Owings*, 17 Howard 47-53; *Elizabeth* v. *Am. N. Pavement Co.*, 97 U. S. 646; *Persse* v. *Cole*, 1 Cal. 369; *Gahan* v. *Neville*, 2 Cal. 81; *Union Water Co.* v. *Murphy's Co.*, 22 Cal. 620; *Atherton* v. *Fowler*, 46 Cal. 320; *Love* v. *Schaitzer*, 31 Cal. 489.

The construction we contend for is in harmony with the practical construction which has been adopted by the parties themselves, and should control. *District of Columbia* v. *Gallaher*, 124 U. S. 505; *Chicago* v. *Sheldon*, 9 Wall. 50; *Steinbach* v. *Stewart*, 11 Wall. 566.

*Evans & Rogers, Saxey & Edwards, Thurman & Wedgwood, DeMoisey & Kenward, D. D. Hautz* and *R. Anderson*, for respondents.

BARTCH, J.:

This controversy arose over certain dams which the plaintiffs erected and maintained in the Jordan river, near its source, at Utah Lake, for the purpose of irrigation. The action was brought to establish the low-water mark in the lake, referred to in a certain contract between the plaintiffs and defendants, made in 1885, to determine the plaintiffs' rights to maintain their dams, and to have the defendants restrained from interfering

with them, and from commencing or prosecuting any suits at law against the plaintiffs on any claim that they had wrongfully raised the water in said lake, or flooded the defendants' lands, or caused any injury or damage thereto by said means. It appears that, during the pendency of the suit, the parties thereto entered into stipulations as to a number of the issues raised in the pleadings; and, respecting those issues, the decree of the court was entered in conformity with the stipulations, and the appeal was taken only from that portion of the decree which relates to the issues tried and decided by the court.

But two questions are presented for our consideration. By virtue of the contract above referred to, the plaintiffs acquired the right to erect and permanently maintain a dam in the Jordan river, at a certain height specified, for the purpose of storing the water in the lake. The construction of the dam was to be such that, by placing planks or other obstructions into the waterway, the water in the lake could be raised, or by removing them, could be lowered. For the purpose of carrying the agreement into effect, provision was made for the appointment of a commission, who were constituted the agents of both parties to the contract, and among other things, were empowered to determine and direct when and to what extent obstructions might be placed into the waterway of the dam, not to exceed the highest elevation specified in the contract. It was also agreed that the plaintiffs should have the right to dredge the bottom of the river and cut through a certain bar in the lake, at the head of the river, so as to permit a more rapid flow, and to secure to themselves a more reliable supply of water by being enabled to draw it from a lower level in the lake, provided a dam were put at a suitable place in the river or at the bar, the lake to be used and maintained as a reservoir.

Under this contract and the evidence, the court decreed, among other things, that the plaintiffs had the right to maintain obstructions in a certain dam, to the height of 14 inches above the floor of the dam, and the first question to be determined is whether the court erred in its decree on this point.

It appears that the first dam was constructed by Salt Lake county, near the boundary line between Salt Lake and Utah counties, to divert water from the river for the purpose of irrigation. All the plaintiffs became interested therein, and afterwards, in pursuance of the contract, a bar in the river, known as the "New Bar," was cut though and dredged, the channel of the river lowered, and a new dam built about a mile below the new bar, but above the old dam, for the purpose of holding the water in the lake at the same level as it was before the new bar was removed, the removal of which was effected, and the dam built, to enable the plaintiffs to draw the water, when necessary, from a lower level in the lake; and the height at which the permanent obstruction may be maintained by the plaintiffs in the new dam, without interference by the commission or any of the defendants, is the exact point now under consideration. The appellants contend that the evidence does not justify the finding of facts on this question, or that portion of the decree entered thereon which determines the elevation which the plaintiffs have a right to maintain the new dam, and the number of inches in depth of the new bar and other obstructions they had removed above the new dam, and permanently lowered the bed of the river. The finding in question is as follows:  "That the plaintiffs in the years 1888, 1889, and 1890, removed bars and other obstructions which naturally existed in the bed of the Jordan river at the new dam, and at the point known as 'New Bar,' in the neighborhood of one mile above the

new dam erected by said plaintiffs in said river, and in such removal, removed permanent natural obstructions then in said river above said dam, and permanently lowered the bed thereof fourteen inches, thus increasing the capacity of said river, and thereby enabling said plaintiffs to utilize fourteen inches more in depth of the water of said lake, over the entire surface thereof, in seasons of low water; that said plaintiffs, by reason of the removal of said bars and other obstructions, to the depth aforesaid, are entitled to at all times keep and maintain planks or other obstructions on the floor or sill of the new dam erected by them, to the height of fourteen inches above the floor or sill of said dam, and no more; and the court finds that said planks, to the height of fourteen inches above the floor of the new dam, are no more or greater obstruction to the flow of the water in said river than were said bars and other natural obstructions before their removal, as aforesaid. The floor of said new dam is found to be six inches lower that the top of the sill of the old dam, as fixed by said contract." On the facts thus found, the court decreed that "the plaintiffs are entitled to at all times keep and maintain planks or other obstructions on the floor or sill of the new dam, erected by them in the Jordan river, to the height of fourteen inches," and no more. It is difficult to see by what process of reasoning such a conclusion was reached.

Counsel for the respondents have, in their brief, attempted an explanation of it; but, to say the least, their argument, in the face of the record and of the above finding, is far from convincing, and is quite unsatisfactory to us. Here is an express finding that the plaintiffs had actually lowered the new bar to the depth of 14 inches, and, because thereof, were entitled to utilize 14 inches more in depth of the waters of said lake, over the entire surface thereof, and that the top of the sill

of the new is 6 inches lower than the top of the sill of
the old dam, which was fixed by contract. It appears
from the evidence that the sill of the old dam is $18\frac{1}{2}$
inches lower than the new bar was before its removal;
and the new dam being above, and 6 inches lower than
the old, how can the plaintiffs utilize 14 inches more of
water over the entire surface of the lake if they be limited
to 14 inches of obstructions on top of the sill of the new
dam? That water seeks its level is a self-evident propo-
sition, and thus the sill of the old dam being 6 inches
higher than that of the new, the effect is to neutralize 6
of the 14 inches of obstructions which the decree per-
mits to be placed on top of the sill of the new dam, which
practically is to allow the plaintiffs but 8 inches of
obstructions. This is so manifestly erroneous as to
amount to an oversight or inadvertance on the part of
the court in entering its decree, notwithstanding the
views of counsel for the respondents to the contrary. In
conformity with the finding of facts, the court ought to
have allowed 20, instead of 14, inches of obstructions to
be placed on the top of the sill of the new dam. Such
would be the inevitable result from the finding of facts
quoted; but the appellants insist that they dredged the
river, and lowered the new bar more than 14 inches; that
the facts found respecting this point are not such as the
evidence warranted; and that they are entitled to main-
tain in the new dam at least 22 inches of obstructions.

Upon careful examination of the whole evidence, we
are bound to admit the correctness of this position. The
witness Doremus, who made the original survey of the
river, for the purpose of settling the controversy between
the interested parties, testified: "I can put an obstruc-
tion upon the floor of the new dam of 2.04 feet before
I will obstruct the flow to any greater extent than the
presence of the new bar did obstruct it. The difference

in elevation between the floor of the new dam and the top of the new bar is 2.12 feet, the top of the bar being the higher." According to further testimony of this witness, when the contract was made, "the difference between the present sill of the lower dam and the top of the outlet bar at the lake was 2 feet and 3 inches." The witness McAlister testified: "I superintended the work of dredging. Was. there frequently at the dam while it was being constructed, and three times ran a line of levels, so as to make sure we were not getting it above the lower dam. The sill of the upper dam might be maintained two feet above its present elevation without retarding the flow of the water any more than the natural obstructions would have done if they had remained in the river and in the bar at the mouth of the lake."

The witness Young said: "The channel is now practically 1¾ feet deeper than appears from Mr. Doremus' notes." Defendants' witness Searles testified that, at the lowest point which he could find on the inlet bar, "the twenty-two inches of boards would be about ¼ of an inch higher than the inlet bar." These witnesses are experts of acknowledged skill and large experience as hydraulic engineers; and from their testimony, as well as from the other evidence in the record, it is difficult to see how 22 inches of obstructions can interfere with the natural level of the lake as it existed before the dredging of the river and the building of the new dam, or at the time when the contract was entered into by the parties to this controversy. It is clear that the contention of the appellants on this point is sustained by such a preponderance of the evidence as will justify us in directing the court below to correct the finding of facts and decree so as to permit the plaintiffs to maintain permanently, without interference on the part of the commissioners or the defendants, 22 inches of obstructions in the new dam;

and if the practical operation of this should overflow any of the lands of the defendants, as is predicted by their counsel, then such misfortune must be attributed to the want of evidence to show that fact.

The remaining material question in this case is whether the Utah Lake commissioners have authority, under the contract, to permit the appellants to place additional obstructions in the dam, between October 1st, in any year, and March 15th following, if such obstructions have been ordered out and removed after the 1st day of October. The trial court decided this question in the negative, as appears from the clause of the decree which reads as follows: "If the said commissioners order the removal of the planks or other obstructions after the 1st day of October in any year, the plaintiffs shall not have leave to replace the same until the 15th day of March of the following year, nor at that time, unless the commissioners shall so decide." The appellants claim that this is the result of an erroneous construction of the contract, and is not in harmony with the intent of the parties to it, and that the intention of the parties in creating the commission was to give it all the power necessary to enable it to carry the contract into effect according to its true intent and meaning.

The commission was created "for the purpose of better carrying" the contract into effect, and the contract, so far as material here, provides as follows: "The said persons shall constitute a board, and are hereby empowered as the legally constituted agents of the parties hereto, to determine and direct when and to what extent obstructions may be placed in the said waterway of the dam for the purpose of storing the lake with water for future use, not to exceed the highest elevation hereinbefore specified; provided, that if in any year, on or after the

13 UTAH—34

15th day of March, it shall be ascertained by said board that the fall of snow during the past winter has been light, and if the said board are of the opinion that the water of Utah lake will probably not rise to the highest level hereinbefore mentioned, then the said board shall permit the said parties of the second part to raise said dam to a height to be fixed by said board, which shall cause the water of said lake to rise to said level; and if it shall be ascertained by experience and observation that the said parties of the second part can obtain all the water necessary for irrigation purposes by keeping the water-way of the dam open until the waters of Utah lake shall have receded below the highest level mentioned, then the said board shall require the waterway to be kept open until the water recedes to such level as the board shall deem sufficient to supply the said parties of the second part with water; and provided, further, that when at any time in each year, to be fixed by said board, the high water of Utah lake shall have receded to the highest elevation above herein specified, the parties of the second part shall have the right, without hindrance from any person or persons, to cause the waters of said Utah lake to be held back by regulating said dam not to exceed the elevation above mentioned, and use the said water as they may desire until such date, on or after the 1st day of October, as said board shall decide, at which date the said parties of the second part shall open the entire waterway of said dam (excepting the uprights) down to the sill or base thereof, and permit the said waters to run free." Under this provision of the contract, it is insisted by the respondents that, if the additional obstructions are ordered removed by the commission after the 1st of October in any year, they cannot be replaced until after the 15th day of March next following. This would

imply that, if they were not ordered removed, they might remain in the dam during the entire winter. We do not think such a construction is warranted by the language employed, nor by the purpose and object for which the commission was created. While the plaintiffs are not permitted to replace the obstructions, of their own motion, after they have been ordered out, still the commission may order them replaced at any time when the circumstances and condition of the lake warrant the obstructing of the flow of the water, so as to comply with the terms of the contract. The purpose and duty of the commission are to watch the condition of the lake, and guard the interests of both parties to the contract. In the absence of express words to that effect, we do not feel warranted to adopt a construction which would empower the commission to permit the planks to remain in the dam from October 1st to March 15th, but prohibit them from replacing them before March 15th, if, for any purpose, they should order them to be removed after the 1st of October; nor, after a careful consideration of the entire contract, are we able to ascertain any good reason why such a construction should be adopted; nor is there anything to indicate that such was the intention of the parties at the time of making the contract. We conclude that the appellants' contention as to this point must also be sustained, and that the findings of facts and decree, in relation to this question, must be modified so as to authorize the commission to replace additional obstructions in the waterway of the dam before the 15th day of March in any year, even if they were taken out after the 1st day of October. We do not deem it necessary to discuss the other points raised in the record. The cause is reversed as to the two points decided, and remanded, with directions to the court below to correct and modify the finding of facts and decree, as to those points, in accordance with this opinion.

ZANE, C. J., and MINER, J., concur.