SALT LAKE CITY, a Municipal Corporation, Appellant, UTAH & SALT LAKE CANAL COMPANY, a Corporation, Respondent, v. SALT LAKE CITY WATER & ELECTRICAL POWER COMPANY, a Corporation, et al., Respondents.

No. 1319.   (67 Pac. 672.)

1. **Waters and Water Courses: Findings of Fact: Sufficiency to Sustain Decree: Appropriations of Water: Prior and Subsequent.**

A court's finding of facts showed that prior appropriators of the waters of a river had for twenty-five years used a sufficient amount of the water to operate their mills and for other purposes. Subsequent appropriators, finding the flow of the river insufficient, dredged the bed of the river, thereby drawing, at a lower level, the water of a lake, having the river for its outlet, and constructed a dam in the river to store the waters in the lake

Salt Lake City et al. v. Wat. & El. Power Co.

when necessary. In consequence of the dam, certain lands became flooded, and the owners thereof instituted suits against such subsequent appropriators for damages. The suits were compromised in 1885 by an agreement whereby the landowners granted to the subsequent appropriators the right to raise the water in the lake by means of the dam to a certain point above the lower mark. The prior appropriators were not parties to such suits and agreement. Since the agreement in 1885, the subsequent appropriators continuously and adversely against all the world maintained the dam as an impounding dam, and stored the waters in the lake, when necessary to preserve the waters of the river for their use, and as permitted by the agreement. *Held*, that the findings of facts justified a decree directing that the subsequent appropriators permit the unobstructed flow of the water down the river in a quantity sufficient to supply the needs of the prior appropriators, and conferring upon the subsequent appropriators the right to impound the water in the river, and to store the same as their interests may require, subject to the right awarded to the prior appropriators, and subject to the limitations of the agreement entered into in 1885.[1]

2. Same.

A court's finding of facts showed that in 1897 a party acting for a predecessor in interest of an appropriator of water, posted and filed for record notices of a purpose to appropriate the flow of a river for operating an electric power plant, subject to the vested rights of prior appropriators. In 1899 such appropriator, a power company, posted, filed, and recorded a notice that it had appropriated the waters of a river appropriated by a former appropriator. It was practicable to use the water for such plant, though, to make it effective, a connection with a canal of such former appropriator was necessary. The power company had been unable to use the water, through the opposition of such former appropriator, though it had been diligent in providing the necessary ditches and flumes. *Held,* that a decree adjudging that the power company was entitled to the water, returning it to the former appropriator undiminished in quantity and unimpaired in quality, was proper under the findings of fact.

3. Same: Decree: Sufficient in Certainty.

A decree establishing the right of an appropriator of water, which limits the use of the water until such appropriator establishes a

---

[1] Salt Lake City v. Colladge, 13 Utah 522; 45 Pac. 891.

right to connect with a canal of a former appropriator, is not void on the ground that it is dependent on a contingency.

4. **Same: Condemnation of Property: Rights of Eminent Domain: Public Use.**
   When a suit to condemn a right of an appropriator of water to connect with a canal of a former appropriator used for a public purpose is pending, the court, on appeal from a decree establishing the rights of appropriators of water, will not determine whether or not the right to condemn exists.

5. **Same: Statutory Construction.**
   Revised Statutes, sections 3588, 3590, 3596, relating to eminent domain, and defining the property subject to condemnation so as to include property taken for public use, render, under ordinary circumstances, property appropriated for a public use liable to condemnation for another public use.[2]

6. **Same: Effect of Decree: Does not Interfere with Prior Appropriation.**
   A decree authorizing a power company entitled, for the purpose of operating its power plant, to a secondary use of the water of a river to take the water from the river above a former appropriator's point of diversion, and to convey it down to its power house, and then to flume it into the canal of the former appropriator, does not destroy that part of the canal above the point where such water is thus discharged into it, nor take from such former appropriator the right to control the flow of its own water, the former appropriator having the right to convey the water which such power company does not use, and it also having the right to control its canal.

7. **Same: Prior Appropriator: Extent of Control: Limit of Right of Others to Use.**
   A former appropriator of water in a river has not the exclusive right to control all the water, and others have the right to its use so long as the former appropriator's use is not interfered with.

8. **Same: When Right to Corpus Attaches.**
   A prior appropriator of water in a river acquires no right to the corpus of the water until such appropriator has conducted it into his canal for use.

9. **Same: Decree: Effect Limited.**
   A decree conferring upon a power company a secondary use of the water of a river so long as the former appropriator "shall con-

[2] Postal Tel. Cable Co. v. Oregon S. L. R. Co., 23 Utah 474; 65 Pac. 735.

tinue to divert its water at its present point of division, and to use the same at its present place of use," is effective, though such former appropriator has the right to change its place of diversion.

10. **Same: Municipality: Constitutional Prohibition Against Sale of Waterworks: Extent of Inhibition.**

Constitution, article 11, section 6, prohibiting the sale or disposition of any waterworks, or water rights, or sources of water by a municipality, does not prohibit the acquisition of a secondary water right against a municipality, the interdiction being only against the Legislature authorizing a municipality to dispose of such property.

11. **Same: Decree: Enforced by Commissioner: Compensation: By Whom Paid.**

A decree settling the rights of numerous appropriators of water in a river, which provides that a commissioner appointed to enforce the decree shall be paid by a certain number of such appropriators only, and relieving others, which are all prior appropriators, will not be disturbed on appeal in the absence of a showing that the imposition of such burden upon a few is unjust. (BASKIN, J., dissenting.)

(Decided February 1, 1902.)

Appeal from the Third District Court, Salt Lake County.—*Hon. C. W. Morse,* Judge.

Action to quiet title to the waters of the Jordan river. From a decree in favor of the defendants and interveners, the plaintiff, Salt Lake City, appealed.

AFFIRMED.

*F. B. Stephens, Esq.,* City Attorney, for appellant; Messrs. *Richards & Varian,* of counsel.

Here is an attempt to make a judgment dependent upon upon a future contingency. Whether it is ever to be made effective depends upon the result of a judgment to be hereafter given in another action, and the payment of damages

which may be awarded. A judgment must be certain and definitive. "A judgment is the final consideration and determination upon matters submitted to it. Whitwell v. Emery, 3 Mich. 84, 59, Am. Dec. 222; Battell & Collins v. Lowery, 46 Iowa 52, 53.

The city is charged, as a public trustee, with the management and control of all this class of property, which is not subject to be devoted to any other use. Without the constitutional provision (art. 11, sec. 6) such property might be devoted to other uses, through condemnation proceedings, but it would require express legislation to that effect. In view of the express prohibition of the Constitution against alienation of such property by the city, the Legislature would have no power to devote such property to other public uses. It is not attempted to do so in this State. The real value incident to property rights exists in the right to dominion and control. Fisher v. Bountiful City, 21 Utah 36. See 1 Lewis Eminent Domain, sec. 56, note 10.

Such property is not held by the municipality in its proprietary capacity, but is of such public utility and necessity that it is held in trust for the use of the citizens. New Orleans v. Morris, 105 U. S. 602; Meriweather v. Garrett, 102 U. S. 513; Ogden City v. Bear L. & R. W. W. Co., 16 Utah 451; Smith v. Mayor of Nashville, 7 L. R. A. 469; Huron W. W. Co. v. Huron, 30 L. R. A. 844.

It is not doubted that, in the absence of constitutional restrictions, the legislative authority extends to the taking of public property for other public uses, but in every case, the agency invoking the statutory authority to take the property of the citizen, *in invitum,* must lay its fingers upon the statute authorizing action. The eminent domain act of this State, "must be construed, as are all such acts, as having regard only for the taking of private property, unless there is either express or clearly implied authority to extend them further."

Seattle & M. Ry. Co. v. State, 34 Pac. 551, and authorities cited.

*L. R. Rogers, Esq.,* and *Ogden Hiles, Esq.,* for respondent Power Company.

Under the statutes of eminent domain, where two public uses can stand together, without impairment or impediment of one by the other, the law is, that they must both so stand. This court has so decided. Postal Telegraph-Cable Co. v. Oregon Short Line R. R. Co., 23 Utah 474, 65 Pac. 735.

In this, this court has followed the unbroken current of authority and has kept to a sound principle. Boston Water Power Co. v. Boston and Worcester R. R., 23 Pick. 360; Overman S. M. Co. v. Carcoran, 15 Nev. 147; West River Bridge Co. v. Dix, 6 How. U. S. 507; Lewis on Eminent Domain, sec. 274.

Neither the city nor any other person can ever acquire a proprietary right in the *corpus* of the water of the lake or river. The right of the city is strictly usufructuary. "The *corpus* of the water is not vested even in the government." Kidd v. Laird, 15 Cal. 180.

No length of use can give the user a proprietary right in the *corpus* of the water of a public stream. City of Los Angeles v. Baldwin, 53 Cal. 469.

Why should not these two uses stand together, when the fact is, that there is no interference of the later with the earlier? They can be made mutually effectual, by simply making connection of the aqueduct with the canal without the slightest injury to the latter.

Section 6 of article 11 of the Constitution has no application. This is an inhibition on city and town governments against alienating waterworks, water rights and sources of water supply, which have been dedicated to the public use. It is probably, also, an interdiction against the power of the

State Legislature to authorize a municipality to alienate such property. The Constitution can not, without a very strained construction, be extended so as to inhibit a secondary appropriation and use of waters which are *publici juris* under the statutes relating to appropriation of water.

*Messrs. Bennett, Howat, Sutherland & Van Cott* for respondent U. S. Mining Company.

*Messrs. Rawlins, Thurman, Hurd & Wedgwood* for respondent East Jordan Irrigation Company.

*Messrs. Brown & Henderson, James H. Moyle, Esq., Messrs. Ferguson, Cannon & Tanner, Messrs. Wilson & Smith, Messrs. Stewart & Stewart, Daniel Harrington, Esq.,* and *M. M. Warner, Esq.,* for other respondents.

BARTCH, J.—This action was brought to quiet title to the waters of the Jordan river, and the defendants and interveners are quite numerous. At the trial the court made findings of fact and of law, and entered a decree, *inter alia,* that the defendant Salt Lake City Water & Electrical Power Company is the owner of and entitled to the right to use all the waters of the river flowing in the channel at and above a point where the company's power plant is situated, and to convey such water to its power plant for use in operating the same, the water then to be returned to the stream and certain irrigating canals; and decreed to each of the other parties to the suit a certain portion of the water flowing in the stream, and appointed a commissioner at a certain monthly salary to superintend and direct the measurement and division of the water distributed by the decree in accordance therewith, to direct, supervise, and inspect all means and appliances for the diversion, conveyance, and use of the water, and to report to the court from time to time any violations of the provisions

of the decree; the court retaining original jurisdiction of the case for the purpose of making all necessary orders and decrees to make effectual the rights awarded and preserved. The plaintiff Salt Lake City now challenges the correctness of the decree by this appeal.

It is insisted by the appellant that the court erred in decreeing as follows: "That the said city and canal and irrigation companies shall at all times allow to flow unimpeded down through the channel of said river a sufficient quantity of water, which, when added to the accretions to the river from seepage and other sources, will furnish at the various points of diversion and measurement the several quantities of water herein awarded to the West Jordan Milling & Mercantile Company, the Utah Mattress & Manufacturing Company, the United States Mining Company, William Cooper, Jr., and Bennion & Bennion for the operation of their several mills and factories; and during the irrigation season of each year shall allow to flow unimpeded through the channel of the river such additional quantity of water as will, when added to the accretions from seepage and other sources, supply, at the various points of diversion and measurement, the quantity of water herein awarded to the several farmers and landowners taking water for irrigation purposes through the Gardner mill race, the Galena canal, the Beckstead Irrigating Company's canal, the Mousley ditch, Bennion & Bennion mill race, and the Cooper mill race, as hereinbefore set forth; and during the winter, or non-irrigating season, four cubic feet of water for the use of the stockholders of the Beckstead Irrigating Company for domestic and culinary purposes. . . . That, subject to these limitations, and to the limitations and conditions contained in the agreement of compromise entered into in 1885 between Joseph H. Colladge and others and said city and canal and irrigation companies, the said city and canal and irrigation companies have the right at all times to shut off, impound, and store the entire flow of the Jordan river,

and hold and save the same for future use, to the extent which, in their judgment, their interests may require." It is urged that this paragraph of the decree restricts the right of storage to the extent of making it subject at all times to the use of prior appropriators, and that under its provisions the quantity of water awarded to the prior appropriators must at all times be permitted to flow past the impounding dam, without regard to the necessities for impounding and storing the water, the impounding dam having been constructed about the year 1889. These provisions of the decree, it is claimed, are inconsistent with and unsupported by the findings of fact.

Upon careful examination of the findings in support of the part of the decree above quoted, we are not prepared to assent to the position here assumed. The appellant does not seem to recognize the force and effect to which the limitations contained in the last part of the above quotation are entitled. It is true that the court also found that in dry seasons the flow of the river became insufficient to supply the needs of the several appropriators and users; that in the year 1889 Salt Lake City and certain canal companies entered into an agreement by which they jointly dredged the bed of the river and removed natural obstructions therein, thereby becoming enabled to draw the water from Utah Lake through the channel of the river at a level twenty-two inches lower than before such dredging; that during the years 1889 and 1890 they constructed a new dam in the river, to enable them to store the water of the lake for use, when needed, and contributed equally to the cost of dredging, of construction of the dam, and of its maintenance ever since; that in storing the water they caused certain lands adjacent to the lake to be flooded, in consequence of which a number of suits were commenced by farmers of Utah county, which finally resulted in an agreement of compromise, made in the year 1885, whereby the owners of those lands granted the city and canal companies the right, so far

24 Utah—17

as the flooding of the lands was concerned, to hold back and store the waters in the lake until they should rise to a point three feet three and one-half inches above the low-water mark, which point has since been known as "compromise point," and its exact location fixed and determined by judicial decisions; and that said compromise agreement contains a provision for the election annually of a board of five persons, who have since been known as "Utah Lake Commissioners," under whose direction the rights granted by the agreement should be exercised by the city and canal companies. We perceive nothing in the findings of fact thus far quoted and referred to which sustains the contention of the appellant on this point. It is clear that the owners of the flooded lands who were parties to the compromise agreement and permitted the storage of the water of the lake were not the farmers and mill owners or prior appropriators mentioned in the above quotation from the decree. Nor does it here appear that such prior appropriators were parties to the suits, or how their rights are affected by the decisions referred to in the findings. In the absence of any showing that the prior appropriators referred to in the provisions of the decree above quoted were parties to the suits mentioned, or to the compromise agreement, or in some way assented to the storage of the water of the lake which they had appropriated, it is difficult to see upon what ground that part of the decree which simply grants them such rights as accrue by virtue of prior appropriation is inconsistent with and unsupported by those findings. It is, however, further found: "That ever since 1885 to the present time the said city and said canal and irrigation companies have openly, notoriously, continuously, and adversely, against all the world, maintained and used said Utah Lake as a reservoir, and said dam as an impounding dam to hold back and store the waters in the lake, when necessary to do so, in order to supply their needs during seasons of scarcity of water, and the said city and canal and irrigation companies have each

contributed an equal share of all costs and expenses of all matters growing out of such joint enterprises. That said right of storage has been since the year 1885 recognized and assented to by all the parties hereto, except the Salt Lake City Water & Electrical Power Company, as necessary to preserve and save the waters of the river for the uses of all appropriators, and said right of storage was and is necessary for such purposes." It will be noticed that the court here found that ever since 1885—that is, since the making of the compromise agreement—the city and canal companies have stored the waters in Utah Lake. The question is, to what waters did the court refer? To all the waters which would have naturally flowed in the channel of the stream, had it not been for the impounding dam obstructing them, or to the waters which the city and canal companies were permitted to store by virtue of the agreement? The evidence is not before us, and we are therefore unable to ascertain from the proof what the actual fact was. Considering, however, the paragraph of the findings of fact above quoted with those immediately preceding, and relating to the suits and transactions between the owners of the flooded lands and the city and canal companies, we are of the opinion that the court had reference to the storing of such waters as were permitted to be stored under the terms of the agreement. This is also explanatory of the fact found "that said right of storage has been, since the year 1885, recognized and assented to by all the parties hereto," because the prior appropriators had no cause for complaint so long as there was no interference with their rights. This view is strengthened by reference to the findings of fact relating to the several prior appropriators. Take, for instance, the case of the United States Mining Company. The court found that that company, by its predecessors in interest, in 1873 appropriated for the mill and smelter "of the theretofore unappropriated waters of the Jordan river a sufficient quantity to supply and operate said smelter and mill, which were from

that time on operated by water power by the various owners thereof, and water diverted from the Jordan river and conveyed through said canal for that purpose; that the said canal has since been known as the 'Galena Canal';" "that ever since the construction of said canal, and until some time in the year 1897, the grantor's predecessors in interest of the said defendant continued to carry water through said canal from the said river for the use of and to use the same for the purpose of operating and supplying the said mills and works incident thereto, and for such purpose, and whenever the interests of their business required it, appropriated and used seventeen cubic feet of water per second of time, measured at the penstock of said mill." It was further found that after 1897 the mill was torn down for the purpose of erecting new reduction works, and that ever since that year the canal has been maintained for the purpose of using the water on the same site. Here are findings not only that the mining company, one of the prior appropriators, is the owner of seventeen cubic feet per second of the water of the river, but also that the same was appropriated in 1873, and used ever since for the purpose of operating its mills, and that it was so used whenever the interests of the business required it. So, likewise, the court found a continuous use of the water for a beneficial purpose by each of the other prior appropriators. From anything that appears in the findings of fact, it is difficult to perceive upon what theory the city and canal companies should be permitted at their mere will and discretion to interfere with a supply of water which has been appropriated and used continuously for a quarter of a century. According to those findings these prior appropriators have vested rights in the use of the water appropriated by them with which no court is warranted to interfere, or to permit subsequent appropriators to do so. There is nothing in the case of Salt Lake City v. Colladge, 13 Utah 522, 45 Pac. 891, nor, so far as we are aware, in any other decision of this court, which militates

against the views hereinbefore expressed. We conclude that upon this point the decree is neither inconsistent with nor unsupported by the findings of fact.

The appellant also complains of that portion of the decree wherein the court adjudged that the Salt Lake City Water & Electrical Power Company is the owner of and entitled to the right to use, and has the right to convey, to its power plant, for the purpose of operating the same, "all the waters of the river to which Salt Lake City is entitled by this decree, and to take into its canal, and to deliver back into the canal of the said Salt Lake City after such use, all of said water undiminished in quantity and unimpaired in quality, so long as said Salt Lake City shall continue to divert its water at its present point of diversion, and to use the same at its present place of use; provided, however, that the right of the said Salt Lake City Water & Electrical Power Company to so take and use the city's said water shall be effective only after said power company has established by judgment of the court in an action at law its right to make connections with its flume and the said city's canal, and shall have paid to said city any sum which may be awarded to said city by such judgment, by way of damages therefor." It is insisted, among other things, that the finding of fact included in finding 16, upon which this part of the decree was based, can only support a decree that the power company, at the present time, has made no appropriation, and is entitled to no water. The court, on the question here presented, found: That in 1897 Dull and Stephens, acting for the predecessor in interest of the power company, by posting and filing for record notices for that purpose, "appropriated the entire flow of the Jordan river (except the waters theretofore appropriated by the East Jordan Irrigation Company and the Utah & Salt Lake Canal Company) at a point immediately south of the old dam, so called, in section 22, township 4 south, of range 1 west, for the purpose of operating a power plant for the generation of

electrical power, the waters so sought to be appropriated to be returned, after having been used for power purposes at such plant, undiminished in quantity and unimpaired in quality, to said river; and such appropriation was declared in said notice to be subject and secondary to all vested rights of prior appropriators." "That in October, 1899, the said defendant power company posted, filed, and recorded a notice that it had appropriated the waters of Jordan river theretofore appropriated by Salt Lake City, and which said city was entitled to flow though its canal, such water to be conveyed through the canal of the Utah & Salt Lake Canal Company to said power plant, and, after passing through the wheels of said plant, to be returned to the city's canal at a point opposite the power plant, undiminished in quantity and unimpaired in quality. · That it is practicable for said defendant company to use the waters of said river, the right of use of which is also in said South Jordan Canal Company and said Salt Lake City, through the wheels and machinery at said power house of said power company, and to discharge the same undiminished in quantity and unimpaired in quality into the said canal of said South Jordan Canal Company and that of Salt Lake City opposite the said power house by means of proper machinery and appliances therefor at said power plant. That the Salt Lake City Water & Electrical Power Company is the owner in fee simple of the land on which the said power house and plant and its appurtenances stand, being about twenty acres of land, situated on the banks of said Jordan river to the thread of the stream." The court also found that the power plant is operated by turbine water wheels, which at full capacity require 700 cubic feet of water per second; that the plant has been operated continuously since 1899, except from December 15, 1900, to January 12, 1901; that, to make the appropriation of the use of the water complete and effective, the power company requires the use of the city's canal for the purpose of discharging water, after it had been

used in the plant, into the canal, through a flume across the river; and that a suit has been instituted to condemn the right to connect with the canal. The court thus found that appropriations of the water were made which were effectual to confer on the power company, for the purpose of operating its power plant, the right to a secondary use of all the water of the river, except that previously appropriated by the East Jordan Irrigation and the Utah & Salt Lake Canal Companies; that it is practicable for the power company for such purpose to use the water of the river, the right of use of which was also in the city, by conveying it through the canal of the Utah & Salt Lake Canal Company, and, after using it to propel the machinery of the power plant and generate power, to discharge it into the city's canal opposite the power house, undiminished in quantity and unimpaired in quality; and that the power company is the owner of the land on which the power plant is situated. The fact that the power company has thus far been unable to so use the water, which the city also has the right to use, is immaterial in determining the validity of the appropriations of the water by that company. It is quite evident that the company has been diligent in providing the necessary ditches and flumes to use the water, and that it has been prevented from using the same through the opposition of the city. This appears from the pleadings, for it is alleged by the power company and admitted by the city that the power company did construct a flume across the river, and connect it with the city's canal, and thereupon for a time, and until it was restrained from doing so in an action brought by the city, did deliver the city's water into its canal. Nor does it appear that any intervening right has accrued since the appropriations by the power company, as against its right. Having thus prosecuted the construction of its ditches and flumes with reasonable diligence, the power company can not, under these circumstances, be held to have forfeited any rights secured to it by its appropriations because of a failure to use the water.

"In determining the question of the time when the right to water by appropriation commences the law does not restrict the appropriator to the date of the use of the water, but applying the doctrine of relation, fixes it as of the time when he begins his dam or ditch or flume or other appliance by means of which the appropriation is effected, provided the enterprise is prosecuted with reasonable diligence." Mining Co. v. Dangberg (C. C.), 81 Fed. 73. Upon careful examination it is evident that the portion of the decree here under consideration is supported by the findings upon which it was founded.

Nor do we think the decree is void on the ground, as claimed by the appellant, that it is indefinite, uncertain, and dependent upon a contingency. It definitely adjudges and establishes the rights of the power company acquired by the appropriations, and then simply limits the use of the water until the power company establishes in another forum its right to make connection of its flume with the city's canal.

As to the validity of the appropriations, and the rights secured thereby, the decree appears to be not only definite and certain but is dependent upon no future event and constitutes a present judgment. Under these circumstances we can not regard the case of Battell v. Lowery, 46 Iowa 49, relied upon by the appellant, as in point, and a controlling authority. Nor do we think, as claimed for the appellant, that it sufficiently appears, as matter of law, that such property as the city's canal is not subject to condemnation. But, since a suit is now pending to condemn the right to make connection with the city's canal opposite the power plant, we will refrain from deciding whether, in this particular instance, and under the circumstances as they may be shown to exist, the law of eminent domain, under our statutes, applies. That our statutes are broad enough to cover, under ordinary circumstances, that class of property, we entertain no doubt. Rev. St. secs. 3588, 3590, 3596. Under the stat-

utes of eminent domain the law seems to be well settled that, where two public uses can stand together without material impairment or impediment of one by the other, they must so stand. This court so held in Postal Tel. Cable Co. v. Oregon S. L. R. Co., 23 Utah 474, 65 Pac. 735. In deciding a like question in the case of Boston Water Power Co. v. Boston & W. R. Corp., 23 Pick. 360, Mr. Chief Justice SHAW said: "Both uses may well stand together, with some interference of the later with the earlier, which may be compensated for in damages." Lewis, Em. Dom., sec. 274; Mining Co. v. Corcoran, 15 Nev. 147; Bridge Co. v. Dix, 6 How. 507, 12 L. Ed. 535; In re Towanda Bridge Co., 91 Pa. 216; Enfield Toll Bridge Co. v. Hartford & N. H. R. Co., 17 Conn. 454, 44 Am. Dec. 556.

The appellant also contends that the appropriation and use of the water by the power company would result in the abandonment and destruction of a mile and a half of the city's canal, and practically take from the municipality the actual control and regulation of the flow of its own water. The record does not seem to sustain this contention. The decree gives the power company no right to interfere with the management, or to sequestrate the city's canal. It is true its canal is on the east side of the river, while the power company's plant is on the west side, and that, in order to utilize the water, the power company must take it out of the river above the city's point of diversion, and on the opposite side, thence convey it through the canal of the Utah & Salt Lake Canal Company down to the power house, and flume it across the river for discharge into the city's canal; but this does not require an abandonment of that portion of the canal, and the city may still have use for it to convey the water which the power company may not use through its plant. Nor does it necessitate any interference with the city in the management of its headgates, or the control of the water in its canal. Such management and control remain absolutely

in the city, and are among its rights; but the city has not the exclusive right to manage and control the use of all the water in the lake or flowing in the river. Such water is *publici juris,* and others have the same right to use it as the city, so long as they do not interfere with the city's use, for the use by one must not interfere with the use by another. Nor has the city, by virtue of its appropriation, acquired a right to the corpus of the water in the lake or river. Not until the water is conducted into its canal does the corpus belong to the city. Then, however, it has the right to use it in any manner it chooses, for any beneficial purpose. The right of the city to the water is strictly usufructuary, and not proprietary, and the use by the power company does not appear to interfere with that right. The decree requires the power company to discharge the water, after use by it, into the city's canal, undiminished in quantity and unimpaired in quality. It is simply a case of two uses of the same water under a primary and secondary appropriation, neither one necessarily interfering with the other; and both uses are beneficial to the public. In such case the prior appropriator can not complain simply because of the secondary use, but he has a right to insist that the water shall be subject to his use and enjoyment to the extent of his appropriation, and that its quality shall not be impaired so as to defeat the purpose of its appropriation. Above his headgates, however, the water in the stream or lake is not his personal property, and he does not become the owner of it until he acquires control of it in artificial ditches or reservoirs. Mining Co. v. Hoyt, 57 Cal. 44; Canal Co. v. Kidd, 37 Cal. 282; Kidd v. Laird, 15 Cal. 162, 76 Am. Dec. 472; Ditch Co. v. Vaughn, 11 Cal. 143, 70 Am. Dec. 769; City of Los Angeles v. Baldwin, 53 Cal. 469; McGuire v. Brown, 106 Cal. 660, 39 Pac. 1060, 30 L. R. A. 384.

It is further contended that this decree is erroneous in that it prevents the city from, in the future, changing its point

of diversion, so as to take the water out upon a higher level. It does not appear from the record that the question whether or not the city has the right to change its point of diversion was presented to or decided by the trial court, and therefore we have no power to pass on it here. If such right exists on the part of the city, we perceive nothing in this decree to prevent its exercise. In fact, the decree expressly limits the use of the city's water by the power company to the present point of diversion, for the provision relating to this subject is that the power company has the right to use such water for the purpose of operating its plant "so long as said Salt Lake City shall continue to divert its water at its present point of diversion, and to use the same at its present place of use." The decree thus deals simply with the present place of diversion and the present place of use. If, therefore, the city, before this controversy arose with the power company, had the right to change its point of diversion, it would seem clear that this decree does not interfere with such right; and hence, if it be assumed, for the purpose of argument, that the appellant has the unquestioned right to change its place of diversion and use, still the right of the power company to use the water without diminishing it in quantity or impairing it in quality, until such time as the city has completed its arrangements and appliances to make the change in the place of diversion and use, can not be denied. Relating to a like point, the Supreme Court of California, in Canal Co. v. Kidd, 37 Cal. 282, said: "A party may to-day take up a site for a dam and canal, and claim the waters of a river, to be diverted at that point, and immediately commence work with a view of appropriating the water to his use for mining purposes, and yet, although laboring with all diligence, be unable actually to use the water for any purpose for years to come. Until he can use it, another party may divert the whole water and use it, provided he can do so without injury to the plaintiff's dam or canal, or the progress of his work, and there would be

no injury to the plaintiff's water right, and no right of action to establish the water right, or recover the water. . . . The property is not in the corpus of the water, but is only in its use." We are thus of the opinion that the decree, as to this point, is not erroneous.

Nor do we think a secondary water right, such as is claimed by the power company, is inhibited by section 6, article 11, of the Constitution. That provision of the fundamental law prohibits the leasing, selling, aliening, or disposing of waterworks, water rights, or sources of water supply by municipalities, and doubtless was also intended as an interdiction against the power of the Legislature to authorize municipalities to lease, sell, alien, or dispose of such property; but there is nothing to indicate that it was the intention of the framers of the Constitution thereby to inhibit the acquisition of secondary water rights, such as the one here under consideration. We, therefore, regard the constitutional provision above referred to as having no application to this case.

It is also insisted that the court erred in providing in the decree that the monthly compensation of the commissioners appointed to carry the decree into effect, and their necessary expenses in so doing, should be paid by the city, the four canal companies, and the power company. It appears from the record that the other parties to this suit were all prior appropriators; that they made their appropriations and used the water at a time when there was no scarcity of water in the river, and prior to the scheme for impounding water in the lake; and that the decree for a systematic distribution of the water among all the parties—appropriators—was made necessary by the acts of those designated to bear the burden. Under these circumstances, and having no opportunity to examine the proof, the evidence not being before us, and in the absence of anything in the record showing that the disposition of the burden of carrying the decree into effect

made by the trial court, who had an opportunity to hear and consider the evidence, is unjust or unlawful, we must decline to interfere with the distribution of the burden made in the decree.

Upon the whole case, after careful examination and consideration of the various points presented, we are of the opinion that the court committed no prejudicial error. The judgment must, therefore, be affirmed, with costs. It is so ordered.

MINER, C. J., concurs.

BASKIN, J. (dissenting).—It appears from the findings of fact that long before the inception of the alleged right of the Salt Lake City Water & Electrical Power Company to the waters of the Jordan river claimed by it, Salt Lake City and the said canal and irrigation companies had appropriated all of the waters of said river flowing therein during the dry seasons at points several miles below Utah Lake, from which the river flows, which had not previously been appropriated by parties further down that stream; and had constructed canals, each several miles in length, into which, by means of headgates, the waters so appropriated had for a long time been diverted and used for beneficial purposes by said city and the said canal and irrigation companies, and that they have ever since continued to so divert and use the same. In the fourteenth finding, the following facts were found by the trial court: "That in dry seasons the flow of the Jordan river became insufficient to supply the needs of the several appropriators and users, as hereinbefore set forth, and in the year 1889 Salt Lake City, the Utah & Salt Lake Canal Company, the East Jordan Irrigation Company, the South Jordan Canal Company, and the North Jordan Irrigation Company entered into an arrangement by which they jointly dredged the bed of the Jordan river, and removed natural obstructions therein, which enabled them to draw the water from Utah

Lake, through the channel of said river, at a level twenty-two inches lower than before such dredging; and during the years 1889 and 1890 the said city and canal and irrigation companies constructed in the river at a point about three-quarters of a mile south and above the old dam, a new dam to enable them to hold back and store the waters of the lake for use when needed, the city and each of said canal and irrigation companies contributing equally to the cost and expense of such dredging and of the construction of said new dam, which amounted to over —— thousand dollars, and of its maintenance since. That immediately thereafter the city and said companies commenced, by means of said dam, to hold back and store the waters in said Utah Lake, and in doing so caused certain lands lying and adjacent to the lake to be flooded, in consequence of which a series of suits were commenced by the farmers of Utah county owning such lands against said city and canal and irrigation companies, which finally resulted in an agreement of compromise entered into in the year 1885, by the terms of which the owners of said lands granted to the said city and canal and irrigation companies the right, so far as their interests or the flooding of their lands was concerned, to hold back and store the waters in the lake until they should rise to a point three feet and three inches above the low-water mark, which point has since been known as 'compromise point,' and the exact location of which has become fixed and determined by judicial decisions. Said compromise agreement provided for the election annually by the parties thereto of a board of five persons, who have since been known as 'Utah Lake Commissioners,' under whose direction the rights granted by said agreement should be exercised by the said city and canal and irrigation companies. That ever since 1885 to the present time the said city and said canal and irrigation companies have openly, notoriously, continuously, and adversely against all the world, maintained and used said Utah Lake as a reservoir, and said dam as an impounding dam, to hold

back and store the waters in the lake, when necessary to do so, in order to supply their needs during seasons of scarcity of water; and the said city and canal and irrigation companies have each contributed an equal share of all costs and expenses of all matters growing out of such joint enterprises. That said right of storage has been, since the year 1885, recognized and assented to by all the parties hereto, except the Salt Lake City Water & Electrical Power Company, as necessary to preserve and save the waters of the river for the uses of all the appropriators, and said right of storage was and is necessary for such purposes. That each year, during the early part of the irrigation season, the city and each of said canal and irrigation companies have taken from the river and conveyed through their respective canals water to the full capacity of such canals for the use of those entitled to use water therefrom. That as such seasons advanced, and the waters receded, the superintendents of the several canal and irrigation companies and a representative of the city would make a division of the waters so long as they could agree thereon, and later in the season, when an accurate division would be called for by any of said companies, an engineer would be employed to measure the waters, and divide the portion to which the city and each of said canal and irrigation companies were entitled equally between them. That in making such divisions there has been allowed to flow down the channel of the river such quantity of water as would, with the accretions arising from seepage or other sources, supply the necessities of the prior appropriators." The trial court further found that: "In October, 1899, the said defendant power company posted, filed, and recorded a notice that it had appropriated the waters of Jordan river theretofore appropriated by Salt Lake City, and which said city was entitled to flow through its said canal, such water to be conveyed through the canal of the Utah & Salt Lake Canal Company to said power plant, and, after passing through the wheels of said plant, to be returned to the city's

canal, at a point opposite the power plant, undiminished in quantity and unimpaired in quality. And in November of the same year a similar notice was posted, filed, and recorded by the said Salt Lake City Water & Electrical Power Company giving notice of the appropriation by it of the waters of the South Jordan Canal Company, to be used in the same way for the same purpose, and returned to the South Jordan Canal in a similar manner. . ·. . That the appropriation of the use of such water for and on behalf of the power company, in order to be completed, requires the use of the city's canal by said power company through a flume across the Jordan river and into the city canal at a point about one mile and a half below the head thereof, and that without such use by the power company of the city's canal, the appropriation of ·the use of such water by the power company can not be made effective. That the said Salt Lake City Water & Electrical Power Company has commenced an action in this court to condemn the right to use the canal of Salt Lake City in the manner aforesaid, and to make effective its appropriation of the use of the city's water. That the Salt Lake City Water & Electrical Power Company, at the time when it made and filed its notices of appropriation of the waters of the Jordan river and located and constructed its power plant upon the said river, had full knowledge and notice of the several rights of said Salt Lake City and the several canal and irrigation companies aforesaid, and of their several appropriations and rights of storage, as aforesaid, and of the exercise of said right to store water in Utah Lake for many years prior thereto." Among other conclusions of law, the trial court found: "That Salt Lake City, the Utah & Salt Lake Canal Company, the East Jordan Irrigation Company, the South Jordan Canal Company, and the North Jordan Irrigation Company are entitled to a decree awarding to them, subject to the limitations hereinafter set forth, the right to the use of all of the balance of the waters of the Jordan river for municipal,

irrigation, culinary, and domestic purposes, to the extent of the capacity of their several canals, and the right to impound and store all the waters of said river in Utah Lake, and to have their title thereto quieted, . . . and shall have an equal right to use all of such waters, to the extent of the capacity of their several canals, and, while there is sufficient water for that purpose, may each take the full quantity of water their respective canals will carry, and, when the water is insufficient to fill all the canals to their maximum capacity, then the city and canal and irrigation companies shall be entitled to an equal division thereof," etc., "and that the Salt Lake City Water & Electrical Power Company is entitled to a decree awarding to it the right to convey to its power plant, and use for the purpose of operating the same, the waters which the city of Salt Lake is entitled to take into its canal so long as said city shall continue to divert its waters at its present point of diversion, and use the same at its present place of use; but the right of the said Salt Lake City & Electrical Power Company to use the city's said water will be effective only after said power company has established by judgment of the court in an action at law its right to make connections with its flume and the city's canal, and shall have paid to the city any sum which may be awarded to said city by such judgment by way of damages therefor." The decree rendered embraces these conclusions of law.

It is clear from the findings of fact that each of said companies and Salt Lake City, at and long before the inception of the rights claimed by the Salt Lake City Water & Electrical Power Company had acquired a vested right, subject only to the rights of prior appropriators, to have the waters of the river, and the waters so stored and held back, diverted in the manner and at the place agreed upon by said parties in their said agreement, and at will to change the points of use and diversion, unless the change would impair the prior rights of

24 Utah—18

other persons.   This vested right can not be impaired by any subsequent appropriation.   The Salt Lake City Water & Electrical Power Company has borne none of the expenses of storing the waters or of acquiring the right to flood the land bordering upon the lake, yet it seeks to share in the benefits arising from the storage by making an alleged appropriation, under which it claims the right to divert the water which the city by prior right is entitled to have turned into its canal in pursuance of its previous appropriation and agreement with the canal and irrigation companies, and conduct the same to its power plant on the opposite side of the river, and from thence across the river into the city's canal one and one-half miles from its mouth.   Under the findings the alleged appropriation is invalid, and fails to show that the Salt Lake City Water & Electrical Power Company has acquired any right whatever to enter upon or discharge the diverted water into the city's canal at the point mentioned.   On the contrary, it is clear, not only from the decree, but from the fact that a suit is pending in which said company seeks, under the law of eminent domain, to acquire such right, that it did not exist at the entry of the decree.   In the pending suit referred to the Salt Lake City Water & Electrical Power Company does not seek to acquire the right to divert from the head of the Salt Lake City Canal the water so as aforesaid appropriated by the city, but wrongfully claims that it has already acquired that right under its said notices of appropriation of the same, and only seeks to acquire the right to discharge into the city's canal, one and one-half miles below its head, water which it wrongfully claims it has the right to divert, under notices of appropriation which are invalid so far as they relate to the prior vested rights of the city.   As the city is the only party that has appealed, only that portion of the decree which relates to the right claimed by the Salt Lake City Water & Electrical Power Company to divert the city's water should be set aside.

For the reasons stated, I am unable to concur with my associates in affirming the decree as a whole.