SALT LAKE CITY WATER & ELECTRICAL POWER COMPANY, a Corporation, Respondent, v. SALT LAKE CITY, a Municipal Corporation, Appellant, and ANN CANNON.

### No. 1418.   (71 Pac. 1067.)

1. **Waters and Water Courses: Eminent Domain: Evidence of Appropriation: Sufficiency.**

In a condemnation proceeding to obtain the right to connect a flume with defendant's canal for the purpose of discharging water into it, after using the same in the operation of plaintiff's power plant, evidence by defendant city's engineer that plaintiff had used the water and delivered it into the city canal under an agreement with the city, until the same was discontinued, conclusively showed that plaintiff had actually appropriated and used the water for secondary purposes under agreement with defendant.

2. **Same: Vested Rights.**

The abrogation by a city of an agreement whereby a power company was permitted to use the water of the city, and discharge it into the city canal, could not divest the power company of any vested rights under the agreement.

3. **Same: Condemnation Proceedings: Necessity of Use: Prior Appropriation: Motion for Nonsuit.**

A proceeding by a power company under the statute of eminent domain to obtain the right to connect a flume with a city's canal for the purpose of discharging water into it, under Revised Statutes, sections 3588, 3590, providing that rights of way for ditches and flumes used to supply water for the operation of machinery, the structure thereon, and lands used in connection therewith, shall be subject to be connected with, crossed, or intersected by others, and to a limited use in common with the

owner thereof, is not a suit to condemn land belonging to the city, as it owns but an easement over the land; and hence it is not necessary to show, as provided in Revised Statutes, section 3591, that the use to which it is to be applied by the power company is a more necessary public use than that to which the city devotes it.

**4. Same: Alienation of Water Rights by City: Constitution Construed.**

Constitution, article 11, section 6, prohibiting the direct or indirect alienation by a city of any water rights or water supply owned by it, does not forbid the acquisition by a power company of the right to connect its flume with the water canal of a city for the purpose of discharging water therein.[1]

**5. Same: Former Judgment: Admissibility.**

A judgment between the parties to an action establishing a right in the plaintiff to the secondary use of water, the primary use of which was in defendant city, was admissible as evidence of the right, although a rehearing was pending in the Supreme Court. BASKIN, C. J., dissenting.

(Decided March 30, 1903.)

Appeal from the Third District Court, Salt Lake County.— *Hon. C. W. Morse,* Judge.

Action, by virtue of the statute of eminent domain, to obtain the right to connect a flume with the defendant's canal for the purpose of discharging certain water into it after using the same in the operation of the plaintiff's power plant. From a judgment in favor of the plaintiff, the defendant appealed.

AFFIRMED.

*Geo. L. Nye, Esq.,* city attorney, for appellant.

---

[1] *Salt Lake City v. Salt Lake City Water & Elec. Power Co.,* 24 Utah 249, 67 Pac. 672.

"The complaint does not state facts sufficient to constitute a cause of action." It will be noted that paragraph 4 negatives directly the allegations of paragraph 3 that the plaintiff "has acquired the right, etc.," by alleging "that in order to make effective the use," something else remains to be done. Thus leaving the complaint without "a statement of the right of plaintiff."

The right to water only arises when the appropriation is complete, and the appropriation can not be complete until the use is actual—effective. Nevada, etc., Co. v. Kidd, 37 Cal. 282-311; Black's Pomeroy on Water Rights, sec. 54; Hague v. Nephi Irr. Co., 16 Utah 429; Black's Pomeroy on Water Rights, sec. 50; Long on Irrigation, secs. 36 and 47.

In the enumeration of property subject to condemnation, the property of municipal corporations actually devoted to a public use is not found; on the contrary the distinction between such property and that held in a purely proprietary capacity is clearly made; thus by paragraph 1, all real property belonging to any person is declared to be subject to condemnation. By paragraph 2, lands belonging to the State or to any county, or incorporated city or town, not appropriated to some public use. Here by specific mention and declaration the Legislature has declared that only lands belonging to the municipality which are held in its proprietary capacity may be condemned to other uses.

The words "lands" as used in this statute, by express statutory definition includes and means hereditaments, water rights, possessory rights and claims. Revised Statutes 2498, par. 10; Groggins v. Boston and A. Railroad Co., 155 Mass. 505, 30 N. E. 72.

*Ogden Hiles, Esq.,* and *L. R. Rogers, Esq.,* for respondent.

BARTCH, J.—In this case the plaintiff seeks, by virtue

of the statute of eminent domain, to obtain the right to connect a flume with the defendant's canal for the purpose of discharging certain water into it, after using the same in the operation of plaintiff's power plant. At the trial the court entered a decree granting the right to make such connection and to discharge the water into the canal. The defendant thereupon appealed.

In the first instance, the appellant insists that the court erred in overruling the defendant's demurrer to the complaint, because, as is urged, no cause of action was therein stated. This position is not sound. Without referring to the allegations of the complaint in detail, we are of the opinion that a cause of action is sufficiently stated, notwithstanding the contention by the appellant that the facts alleged are not sufficient to show an appropriation of the water for the purposes of the plaintiff's power plant. That such appropriation was in fact made, and that the same is sufficient in law for those purposes, are matters which were decided in favor of the power company in the case of Salt Lake City v. Salt Lake City Water & Elec. Power Co., 24 Utah 249, 67 Pac. 672, and therefore we do not deem further discussion of this point herein important, except to refer to some of the testimony of the defendant showing an actual use of the water by the power company.

The witness Kelsey, who was the city engineer of Salt Lake City, and was familiar with the locus of the power plant, and with its flume connecting with the Jordan and Salt Lake canal, and with the canal of Salt Lake City, testified, among other things, as follows: "I was in the city's service when the connection was made. I knew that at one time the power company used the water through the powerhouse and delivered it into the city canal under some agreement between the city and the power company, and then that agreement was abrogated and the disconnection was made. I do not know

how long that use occurred. I never heard that there was any special damage done to the city canal by the discharge of the city water during that time into it."

It thus appears that the water was not only diverted for the secondary use, but actually used for the purposes intended, and this with the defendant's consent and agreement. It is therefore idle to insist, as has been done all through this litigation, that there was no appropriation for such use. Nor could the mere abrogation of that agreement divest the power company of vested rights.

Equally unsound is the insistence that the court erred in overruling appellant's motion for a nonsuit, made after the plaintiff had rested its case. The motion was based on the ground that it appears in evidence that the land sought to be condemned has already been appropriated to a public use; that it does not appear that the use to which it is now sought to be put is a more necessary public use; that the plaintiff has failed in its proof to comply with subdivision 3, section 3591, Revised Statutes; and that it appears from the evidence submitted, and from the pleadings, that the land sought to be condemned belonged to the defendant and was appropriated by the defendant to a public use. The answer to this is that the object of this suit was not to condemn land belonging to the defendant city. Nor does the judgment herein condemn any of the city's land. The land on which the flume was built did not belong to the city. The city owns but an easement over it for the purpose of its canal. Like the power company, the city is a mere licensee. The only thing within the controversy herein, and which was adjudged, was a right to make a connection of the flume with the city's canal, by virtue of subdivision 5, section 3590, Revised Statutes, which reads: "All rights of way for any and all purposes mentioned in section thirty-five hundred and eighty-eight, and any and all structures and improvements thereon, and the lands held or used in con-

nection therewith, shall be subject to be connected with, crossed, or intersected by any other right of way or improvement or structure thereon. They shall also be subject to a limited use in common with the owner thereof, when necessary; but such uses of crossings, intersections and connections shall be made in the manner most compatible with the greatest public benefit and the least private injury."

Section 3588, here referred to, enumerates, among other things, ditches and flumes used to supply water for the operation of machinery, for the purpose of generating and transmitting electricity for power, light, and heat, as subjects in behalf of which the right of eminent domain may be exercised. That these provisions of the law are broad and comprehensive enough to include such cases as the one at bar we entertain no doubt. Evidently the Legislature intended, by enacting them, to provide a remedy for the removal, as far as possible, of all obstacles which would be a menace to industry, progress, and the upbuilding of the state, and this is in consonance with the spirit of our Constitution. At the time the motion was made the evidence clearly showed that the plaintiff had made out a prima facie case, and that it fell within the terms of the statute. The nonsuit was therefore properly denied.

It is further insisted that the court erred in its judgment for the reason that the Constitution, in section 6, article 11, inhibits the alienation, by a municipal corporation, of any water rights acquired by it for the use or benefit of its inhabitants. This section of the Constitution has no application to a case like the one at bar. It was so held in Salt Lake City v. Salt Lake City Water & Elec. Power Co., supra. We there, referring to the same section, said: "That provision of the fundamental law prohibits the leasing, selling, aliening, or disposing of waterworks, water rights, or sources of water supply by municipalities, and doubtless was also intended as an interdiction against the power of

the Legislature to authorize municipalities to lease, sell, alien, or dispose of such property; but there is nothing to indicate that it was the intention of the framers of the Constitution thereby to inhibit the acquisition of secondary water rights, such as the one here under consideration. We, therefore, regard the constitutional provision above referred to as having no application to this case."

The construction then given was impliedly adopted in this case when it was before us on the application for a writ of certiorari, and upon further consideration we have no disposition to change it.

Nor do we think, as contended by counsel for the appellant, that the court erred in admitting in evidence the judgment and decree of Salt Lake City v. Salt Lake City Water & Elec. Power Co., hereinbefore referred to, or in finding as a fact that the power company had been adjudged to have the right to use that part of the water flowing in the river, the primary use of which is in Salt Lake City. That decision had been affirmed by this court, and whether or not the judgment was conclusive, a petition for rehearing then pending, it was, in our opinion, clearly admissible in this case, as evidence tending to establish the matters therein recited. There are other questions presented, but they are not deemed of sufficient importance to require separate discussion.

We find no reversible error in the record. The judgment is affirmed, with costs.

McCARTY, J., concurs.

BASKIN, C. J. (dissenting). — I dissent from my associates in this case on the grounds stated in my dissenting opinion in the case between the same parties, reported in 24 Utah 249-269, 67 Pac. 672, and for the reason that the real property belonging to the city and appropriated to some public use, as was the case in respect to the property in question in

this case, is not subject to condemnation under chapter 65, Revised Statutes, relating to eminent domain. Under the provisions of sections 2497 and 2498, subdivision 10, and terms "land," "real estate," and "real property" when used in a statute, unless inconsistent with the manifest intent of the Legislature or repugnant to the context of the "statute," include water rights, possessory rights and claims. In section 3590 the property subject to condemnation under chapter 65 is designated. Subdivision 2 of that section designates the lands belonging to an incorporated city which are subject to condemnation, and is, as follows: "Land belonging to the State, or to any county, or incorporated city or town, not appropriated to some public use." I have no doubt that lands as used in this subdivision includes the property of the city sought to be condemned in this case, and excepts the same from the operation of chapter 65. See my dissenting opinion in the case between the parties to this action, 24 Utah 249, 67 Pac. 672.