Amos G. Nichols

*versus*

Somerset and Kennebec Rail Road Company.

</div>

The legislature may authorize a temporary exclusive occupation of the land of an individual, incipient to the acquisition of a title to it, or to an easement in it for a public use, without violation of art. 1, sec. 21, of the constitution of this state.

But such title must be perfected within a reasonable time after occupation of the land, by payment or tender of the required compensation, or the occupation will become unlawful.

The *time* of taking such real estate referred to in R. S., chap. 81, sec. 4, must be the time of entering into the occupation of the land.

There may be cases where a reasonable time, after a temporary occupation, will not expire before three years. The reservations in the 14th section of the charter of the Somerset and Kennebec Rail Road Company is remedial only, and contains no power to change an obsolete grant to a conditional one.

Nor is the requirement of erecting and maintaining fences a condition upon which the rights granted by their charter were made to depend.

Reported by Rice, J.

This is an action of trespass *quare clausum.*

All the facts material to a full understanding of the points decided appear in the opinion of the court.

*R. H. Vose,* counsel for the plaintiff, contended that this action is maintainable by force of secs. 4 and 5 of chap. 41 of the statute of 1853.

That the land taken must first be fenced.

That this requirement does not conflict with their charter, because the legislature have expressly reserved the power to inquire into their doings and impose fines and penalties in the 14th section thereof.

That the doctrine of vested rights cannot prevail here. Charles River Bridge v. Warren Bridge, 7 Pick. R., 344.

*Bradbury & Morrill,* counsel for the defendants.

The action is trespass, and cannot be maintained.

The defendants do not deny the acts complained of, but justify them on the ground of license.

License or authority in law by the charter and law of the state. 2 Greenl. on Ev., secs. 627, 632; 2 Wheaton's Selwyn, 1022.

By section 1 of their charter the company has full power to locate, construct and finally complete a railroad, and to take land for this purpose. While acting within scope of the charter and law no action will lie. Stackpole and al. v. Healey, 16 Mass. R., 33; Cool v. Crommett, 13 Maine R., 250.

Having his remedy by statute provision, he is excluded from his common law remedy. Mason v. K. and P. R. R. Co., 31 Maine R., 250.

The rights of the defendants are not affected by the act of 1853, being exempt from its provisions by the 14th section of their charter.

MAY, J. This is an action of trespass *quare clausum* against the defendants for breaking and entering the plaintiff's close, situate in Vassalborough, and constructing their railroad across the same. The defendants filed a plea of not guilty, and a brief statement alleging an authority under their charter, dated August 10, 1848, for the doing of the

acts complained of; and also a written license from the plaintiff permitting the same. The alleged acts of trespass were committed August 1, 1853, and afterward, and were such as were necessary in the construction of said railroad.

By the terms of their charter the defendants are authorized and empowered to locate, construct, and finally complete, alter and keep in repair their railroad; and they are invested with all the powers, privileges and immunities necessary to carry into effect the aforesaid purposes and objects; and for that purpose have the right to purchase, or take and hold so much of the land and other real estate of private persons and corporations, along the route described in the first section of said charter, and an act of amendment passed February 5, 1853, as may be necessary for the location, construction, and convenient operation of said railroad; the land so taken not to exceed six rods in width, except where greater width is necessary for the purpose of excavation or embankment; *provided, also,* that in all cases said corporation shall pay for such lands so taken, such price as they and the owner or respective owners thereof may mutually agree on; and in case said parties shall not otherwise agree, then said corporation shall pay such damages as shall be ascertained and determined by the county commissioners where such land may be situated, in the same manner and under the same conditions and limitations as are by law provided in the case of damages by the laying out of highways. And the lands so taken by said corporation shall be held as lands taken and appropriated for highways. It is contended in defence that these provisions fully authorize the acts which have been committed.

The extent of such authority has been fully considered by this court in the case of Cushman v. Smith, 34 Maine R., 247, in reference to the charter of the Buckfield Branch Railroad Company, in which precisely the same provisions are contained as those upon which the defendants rely. That charter was passed July 22, 1847. The opinion in that

Nichols *v*. Som. and Ken. R. R. Co.

case was drawn by SHEPLEY, C. J., and discloses great legal learning and ability. The principles it contains are in our judgment decisive of the rights of the parties in this case.

In that case it was held that that provision in the declaration of rights, contained in art. 1, sec. 21, of our constitution, which declares that " private property shall not be taken for public uses without just compensation," while it prevents the acquisition of any title to land or to an easement in it, and does not permit a permanent appropriation of it, as against the owner, without the actual payment or tender of a just compensation, does not operate to prohibit the legislature from authorizing a temporary exclusive occupation of the land of an individual, as an incipient proceeding to the acquisition of a title to it, or to an easement in it, for a public use, although such occupation may be more or less injurious to the owner. Such temporary occupation, however, will become unlawful unless the party authorized to make it acquire, within a reasonable time from its commencement, a title to the land, or at least an easement in it. If the defendants would have acquired any such title or easement in the land of the plaintiff, without his consent, the burden was upon them to see to it, that the proceedings necessary to such acquisition were instituted and completed, and that the payment of compensation required by the constitution was actually made or tendered. If they have neglected to do so for an unreasonable time after entering into the exclusive occupation of the land, then the acts complained of have become unlawful, and an action may be maintained therefor. In such case the defendants may properly be regarded as trespassers from the beginning, and damages may be recovered for such acts and the unlawful occupation connected therewith. Their failure or neglect to acquire a title in pursuance of their charter within a reasonable time after taking exclusive possession of the land, if they have so failed or neglected, places the plaintiff in the same position, so far as his rights are concerned, as if no legislative authority had been conferred upon the defendants to occupy his land.

Nichols *v.* Som. and Ken. R. R. Co.

The facts in the case show that the defendants entered into the exclusive occupation of the premises on the first day of August, 1853, and kept it until the date of their writ, which is July 31, 1855, and during this period it does not appear that the defendants have instituted any proceedings, or made any payment or tender of compensation, with a view to acquire any permanent rights in the land. The plaintiff, although he might have instituted such proceedings as are provided for the recovery of damages in the case of highways, was not obliged to do so. He had the legal right to regard the defendants as the moving party, and to act accordingly.

The question then arises, whether the defendants had in fact, after taking the exclusive possession of the plaintiff's land, and prior to the inception of this suit, delayed, beyond a reasonable time, the performance of that condition upon which alone, according to the true construction of the clause in the constitution before cited, their title to the land or an easement in it can have become perfected, so that by such unreasonable delay they have forfeited their chartered rights and made the acts complained of unlawful from the beginning. What is a reasonable time, depends upon all the circumstances of the case.

The provision of the constitution before referred to, says SHEPLEY, C. J., in the same case before cited, " was evidently not intended to prevent the exercise of legislative power to prescribe the course of proceeding to be pursued to take private property and appropriate it to public use. Nor to prevent its exercise to determine the *manner* in which the value of such property should be ascertained, and payment made or tendered. The legislative power is left entirely free from embarrassment in the selection and arrangement of the measures to be adopted to take private property and appropriate it to public use, and to cause a just compensation to be made." The only constitutional restriction upon such power, is that it shall be so exercised as not to permit the owner to be deprived of his title to it or any part of it, with-

out the payment or tender of a just compensation being actually made, within a reasonable time after its first appropriation and before the title is lost. The legislature, then, had the power to authorize the defendants to do all the acts complained of with a view to the acquisition of a title to the land or an easement in it, and to fix and determine, in case of no agreement between the parties, some *mode* for ascertaining the value of the land taken, and *the time, if not unreasonable,* within which compensation should be actually made, and if not so made no permanent title can be acquired, and the preliminary acts authorized as incipient to its acquirement will become unlawful. No question is made as to the reasonableness of this mode, and the only question now to be considered is whether the time which actually elapsed after the defendants commenced their occupation, before the suit, was unreasonable.

By the R. S., chap. 81, sec. 4, no application by either party to the county commissioners to estimate the damages can be sustained, unless made within three years from the time of taking such real estate. The time of taking here referred to, must be the time of entering into the occupation of the land, and not the time of the acquisition of a perfect title, nor the taking to which reference is had in the constitution. This is apparent from the construction which the word " taken " has received in that instrument, in the case of Cushman v. Smith, before cited. Nor can it be properly understood that the statute, under all circumstances, authorizes such application to be made in all cases at any time before the expiration of the three years. The plain implication from it is, that some cases may exist where a delay, not exceeding three years, to make application, may not be so unreasonable as to prevent it being made, if made within the time. It is a legislative declaration that there may be some cases where a reasonable time after the commencement of a temporary occupation will not expire until three years have elapsed. No reason is perceived why the owner of the land may not defer it as he pleases, since he may defer it altogether

24

without losing his right to a compensation. But there are strong reasons why the party who is claiming to hold the land of another, without his consent, should be held to a good degree of diligence, if not promptness, in taking his steps to make compensation, if he would acquire any title as against the owner. The acquiring party, however, may be excused by the consent or acts of the owner from that promptness which might otherwise be required. A strict performance may be waived. In the present case there was but two years delay, and we cannot say, considering the acts of the parties, the attempt at a mutual agreement as to the price of the land, if such agreement were not actually made, and the fact that the plaintiff, so far as the case discloses, had taken no steps, aside from some efforts to settle, until this suit, to prompt the defendants to a more speedy action, that there had been, when this action was brought, so much delay on their part in instituting proceedings, or tendering payment of a just compensation, as to vitiate and render void the authority which the legislature, by their charter, had conferred. Two-thirds only of the longest possible time recognized by the legislature for cutting off the rights of the defendants to perfect their title to an easement in the plaintiff's land had elapsed. Their charter, in view of all the circumstances of the case, we think must be regarded as a justification, when this suit was brought, for the acts of trespass alleged. We do not perceive evidence of any acts indicative of an intention on the part of the defendants, not to make a just compensation to the plaintiff for his land, so as not to acquire a permanent interest therein. Their continued occupation implies the contrary. The view we have taken of this case renders it unnecessary to consider whether the written subscription or agreement relied on in defence, was a license authorizing the acts complained of, or not.

It was contended by the plaintiff that this action may be maintained by force of the statute of 1853, chap. 41, secs. 4 and 5. Nothing is better settled in this state than that a charter like that of the defendants, when accepted by the

corporation, becomes a contract which cannot be modified or impaired in its obligation any further than is provided in the terms of the charter, without the consent of the corporation. This is conceded by the plaintiff's counsel. But it is urged that such power was expressly reserved in the fourteenth section of the defendants' charter. By that section it is provided that the legislature shall, at all times, have the right to inquire into the doings of the corporation, and into the manner in which the privileges and franchise granted may have been used by the corporation; and to prevent all abuses of the same; and to pass any laws imposing fines and penalties, which may be necessary more effectually to compel a compliance with the provisions, liabilities, and duties imposed upon the corporation by their charter; but not to impose any other or further duties, liabilities, or obligations. It is plain that the legislative power here reserved is entirely remedial in its character. It contains no power to make or change a grant, which by its terms is absolute, into one that is conditional. It reserves no power to any subsequent legislature to lessen the time stipulated in the charter, within which the defendants had the right to perform the conditions by which alone they were to acquire the lands, or an easement in them, which were necessary for the location and construction of their railroad. By the terms of their charter, as we have seen, they were entitled to a reasonable time after entering into the exclusive occupation of such lands with a view to acquire an interest therein. The time so fixed is an essential part of the contract, and it is beyond the power of the legislature to create a forfeiture within a shorter time by imposing new duties; or to subject the defendants to an action, if they choose to avail themselves of all the time allowed them by their charter, within the limits of the constitution, for the performance of those acts upon which their essential rights may depend, and they have not attempted to exercise any such power. The provision in sec. 8, of their charter, requiring them to erect and maintain fences upon the sides of their road, where it passes through enclosed or

improved lands, was not a condition upon which the rights granted by the charter were made to depend; and upon the principles before stated, it could not by subsequent legislation be made such; nor was it competent for the legislature to prohibit the defendants from entering upon and using any real estate necessary for the location and construction of their railroad, in the manner, and for the purposes authorized by their charter subject to the conditions contained in them. No new conditions could be imposed. The rights of the plaintiff are not enlarged, nor those of the defendants diminished by sections four and five, in the act of 1853, before cited. How far it is competent for the legislature to impose the forfeiture of any of the chartered rights of the defendants, as a penalty for the non-performance of the duties required by their charter, we are not now called upon to determine, the exercise of no such power having been attempted. There being, therefore, no proof of any acts of trespass not authorized by the charter of the defendants, the plaintiff must become nonsuit.

*Plaintiff Nonsuit.*