## KANSAS & A. V. RY. Co. v. PAYNE et al.

*(Circuit Court of Appeals, Eighth Circuit. January 25, 1892.)*

1. RAILROAD COMPANIES—RIGHT OF WAY—COMPENSATION—INJUNCTION.

Complainants occupied a tract of land in the Indian Territory, fronting on the Arkansas river, opposite the city of Ft. Smith, and were engaged in operating a ferry at that point, under a license granted them by the Cherokee Nation. The K. & A. V. Ry. Co., in 1888, condemned a right of way through said tract of land to the river, under Act Cong. June 1, 1886, which authorized it to build a railroad through the Indian Territory, and to condemn land to be used for *railway, telegraph, and telephone purposes only.* On March 15, 1890, congress authorized the railway company to build a bridge across the Arkansas river, to be used as a *railway, passenger, and wagon bridge.* The last act recited that the building of the railway, · as authorized by the act of June 1, 1886, involved the necessity of constructing the bridge. *Held:* (1) That, by the act of March 15, 1890, congress impliedly authorized the railway company to use its right of way as a road-way for ordinary travel, so far as might be found necessary to give vehicles and foot passengers access to its bridge. (2) That the grant of the right to build a bridge for the purpose of general travel did not infringe the ferry franchise. (3) That the complainants were not entitled to compensation for the loss of ferry patronage, as the building of the bridge and suitable approaches thereto for general travel had not cut off access to the ferry landing, or rendered it any less feasible than before to operate a ferry. (4) That a court of equity would not enjoin the railway company from permitting foot passengers and vehicles to travel over its right of way, to such extent as might be necessary to reach the bridge, for the reason that the damages, if any, incident to such use, might be recovered in an action at law, and were certainly very small, if not purely nominal; and, furthermore, because the railway company did not propose to intrude upon the possession of any lands occupied by the complainants.

2. SAME—RELIEF IN EQUITY.

A court of equity is not bound to grant an unconditional order of injunction when it can afford adequate relief in some other manner. Adequate relief would have been afforded in the present case by requiring the railway company to give a bond to pay such damages, if any, as might be eventually assessed against it in consequence of the alleged new use imposed on the right of way.

Appeal from the Circuit Court of the United States for the Western District of Arkansas.

Action by Gabriel L. Payne and Houston J. Payne against the Kansas & Arkansas Valley Railway Company to restrain the use of defendant's right of way for approaches to a passenger and wagon bridge. Defendant appeals from a decree for complainants. Reversed.

*H. S. Priest* and *Alex. G. Cochran,* for appellant.

*John H. Rogers,* for appellees.

Before CALDWELL, Circuit Judge, and SHIRAS and THAYER, District Judges.

THAYER, District Judge. This is an appeal from an order granting and continuing a preliminary injunction, as authorized by the seventh section of the act of March 3, 1891, creating this court. The sole question for our consideration is whether the existing injunction was properly awarded, and that is to be determined on the case made by the bill and answer, and the affidavits and exhibits filed in the lower court on the hearing of the motion. The record before us shows that the appellant is a corporation created and existing under and by virtue of the laws of the state of Arkansas, and that by an act of congress approved June 1, 1886, (24 St. p. 73,) it was authorized to locate, construct, and operate a railway, telegraph, and telephone line through the Indian Territory, be-

ginning on the eastern line of the territory, at or near the city of Ft. Smith, in the state of Arkansas, and running thence, in a north-west-wardly direction, through the Territory to a designated point on its northern boundary line. To that end the railway company was em-powered to take and use a right of way 100 feet in width through the Indian Territory, but it was provided, in effect, that the land taken should not be leased or sold, and that it should *only* be used in such manner and for such purpose as should be necessary for the con-struction and convenient operation of a *railroad, telegraph, and telephone line.* The act contained provisions requiring compensation to be made to the Indian tribes and to individual occupants for all such lands as might be taken, and it also prescribed a mode of condemnation to be pursued in certain contingencies; but, without going into detail, it will suffice to say that before said railway could be constructed through any lands held by individual occupants, "according to the laws, customs, and usages of the Indian nations or tribes through which it might be constructed," the act required that full compensation should be made to such occupants "for all property taken or damage done by reason of the construction of such railway." Under the authority so conferred, and prior to the institution of this suit, the appellant had located and constructed its railroad for a long distance through the Cherokee Nation down to a point on the north bank of the Arkansas river opposite the city of Ft. Smith. To reach the water at that point, it was compelled to condemn a right of way through a tract of land, fronting on the river, which was occupied and held by the appellees according to the laws, customs, and usages of the Cherokee Nation. Such condemnation pro-ceeding was duly prosecuted in the mode prescribed by the act of June 1, 1886, and resulted in a final decree on January 14, 1888, granting to the railway company a right of way through the appellees' lands to the water's edge. The damages awarded in such proceeding appear to have been duly paid shortly after the final decree. By another act of congress, approved March 15, 1890, (26 St. p. 21,) the appellant was authorized to bridge the Arkansas river at or near Ft. Smith. The first section of that act is as follows:

"Be it enacted * * * that the Kansas & Arkansas Valley Railway, a corporation organized and existing under the laws of the state of Arkansas, and being empowered by act of congress approved June first, eighteen hun dred and eighty-six, to construct its railway from a point on the eastern boundary line of the Indian Territory, at or near Ft. Smith, Arkansas, through said territory, in a north-west direction, to a point on the northern boundary line of said territory, with the power to build a branch as therein provided, the construction and operation of which said line of railway in-volves the necessity of constructing a bridge across the Arkansas river, in the Indian Territory, from a point at or near Ft. Smith, be, and the said Kansas & Arkansas Valley Railway, its successors and assigns, are hereby, authorized and empowered to construct said bridge across said river, and to maintain and operate the same as a railway, passenger, and wagon bridge."

After the approval of the act last referred to, the railway company proceeded to construct a bridge strictly in accordance with its provis-

ions. It was so located that the northern end of the structure abutted on, and lay wholly within, the limits of the right of way previously condemned through the lands of these appellees. The bridge had been about completed, and the railway company was constructing an approach thereto at the northern end, suitable for the use of wagons and foot-passengers, as well as for railway trains, when the work was arrested by the order of injunction from which this appeal was taken. The bill filed by the appellees to obtain an injunction alleged, among other things, that complainants occupied land fronting on the Arkansas river both above and below the northern terminus of the bridge; that a ferry privilege was "attached to said land;" that they had a license and the exclusive right from the Cherokee Nation to run a ferry across the river from that point to Ft. Smith, and had been engaged for years in running a ferry for the accommodation of wagons, pedestrians, stock, and general travel, and had a large sum of money invested in said ferry; that the railway company had begun to construct "on its right of way," at the north end of the bridge, a wagon road and approaches for vehicles, foot-passengers, and general travel, and had also begun to construct such approaches on the complainants' land outside of the limits of its right of way. It was further averred that the construction of said road-way for footmen and general travel, on the railway company's right of way, constituted an additional burden on complainants' land which was unauthorized by law, and that the construction of said road-way for general travel over the appellant's right of way, and over the complainants' land, "would utterly destroy the value of the ferry privilege attached to said lands, and cause almost a total loss * * * of the money invested in said ferry, ferry franchises, privileges, and other ferry property."

The foregoing statement discloses the material facts on which the appellees predicated their right to injunctive relief. The case is stated more at length in the opinion of the lower court. 46 Fed. Rep. 546. It is evident that the existing injunction cannot be sustained on the ground that the railway company had begun to construct approaches to its bridge suitable for foot-passengers and vehicles, outside of the limits of its right of way, and on lands at the time occupied by the appellees. The injunction as awarded is clearly too broad to be sustained solely on that theory, for the reason that it in effect restrains the railway company from permitting wagons and foot-passengers to have access to its bridge over any part of its right of way heretofore mentioned, which is the only method of gaining access to the bridge that seems to be possible. The right to an injunction, however, is not rested exclusively or mainly on the ground last suggested. It is contended in behalf of the appellees, that the railway company has no authority to permit any part of its right of way to be traveled over by vehicles or foot-passengers for the purpose of reaching the bridge, because that would be subjecting the right of way to a new use, without compensation; and, furthermore, that a court of equity, when appealed to, must of necessity award an injunction to prevent the imposition of such additional servitude. We are of the opinion, in view

of all the circumstances of the case, that an unconditional order, such as was entered, restraining the appellant from constructing on its right of way a suitable road-way for footmen and vehicles, and restraining it as well from permitting the public to use the same, should not have been granted, and cannot be upheld, even on the last-mentioned theory. We entertain no doubt that the railway company has the right to construct an approach to the north end of its bridge, provided it keeps within the limits of its right of way, and that the appellees have no just cause to complain, even though the approach is made wide enough, and suitable for general travel, as well as for railway trains. The width and character of the approach is no concern of the appellees, if it is located wholly on land heretofore condemned and in the possession of the railway company. What they really desire to prevent by these proceedings is the use of the right of way by wagons and pedestrians when the approach to the bridge is completed; it is this right of use which evidently forms the subject of contention.

By the act of March 15, 1890, *supra,* congress, as we think, impliedly authorized the railway company to use its right of way as a road-way for ordinary travel, so far as might be found necessary to give vehicles and foot-passengers access to its bridge. The railway company, therefore, has legislative sanction for permitting the new use of which the appellees complain. The act declares that the structure thereby authorized may be used as a "railroad, passenger, and wagon bridge;" and it recites, in substance, that the grant of the right to construct a railroad through the Indian Territory, by the previous act of June 1, 1886, "involved the necessity of constructing a bridge across the Arkansas river, in the Indian Territory, * * * at or near Fort Smith." From these provisions it must be inferred that congress intended that the north end of the bridge should abut against appellant's right of way where it intersected the Arkansas river, and form a mere prolongation of the right of way across the stream. Under these circumstances, we must presume that congress intended that the railroad right of way should be used by wagons and foot-passengers to such extent as might be found necessary to enable them to reach the bridge, and that appellant should permit such use. To indulge in any other presumption would be to hold that congress has granted a right that cannot be enjoyed, as there is no mode by which general travel can reach the bridge, without passing to some extent over the railroad right of way. Furthermore, the moving papers in the cause show that the railway company only proposes to use its right of way for general travel for a short distance back from the river, where the railroad crosses a public highway, and that the opening of the bridge for the use of foot-passengers and vehicles, as well as for railroads, is a matter of such great public concern that the citizens of Ft. Smith have already donated a considerable sum towards the erection of the structure. It must also be borne in mind that the alleged new use to which the appellant proposes to devote a portion of its right of way in no wise interferes with the possession of any lands now held and occupied by the appellees; neither does it alter any of the physical aspects of the place. The new

servitude imposed on the right of way will not render it any less feasible than before to operate a ferry across the river, as it is not alleged, or even suggested, that any proposed changes made along the right of way to adapt it to general travel will obstruct access to the ferry landing, either on the land or water side, or impair any other riparian right. In short, the appellees, in their bill, have not alleged any loss or inconvenience as liable to ensue from the new use, except that the opening of the bridge for the accommodation of general travel will lessen the patronage of the ferry; and this is evidently a species of damage against which neither a court of law or equity can afford the appellees any protection. It is a damage not due to the fact that by destroying some riparian right of the appellees, or by obstructing the approaches to the ferry landing, the railway company has rendered it less feasible to operate a ferry; but it is a damage that is wholly due to the fact that a new means of crossing the river has been authorized by congress, which enters into competition with the ferry, and renders the business less profitable. It is hardly necessary to add that congress was not bound to provide compensation for a consequential injury of that character, when it authorized the construction of a bridge, as the ferry franchise was not infringed or taken, within the meaning of the constitution, by building the bridge. And the same proposition would hold good if the appellees had had a special franchise to operate a ferry for a term of years, instead of a ferry license from the Cherokee Nation, renewable annually, which is all that the present record discloses. *Parrott* v. *City of Lawrence*, 2 Dill. 332; *Bush* v. *Bridge Co.*, 3 Ind. 21; *Hartford Bridge Co.* v. *Union Ferry Co.*, 29 Conn. 210; *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 420.

In view of the considerations to which we have adverted, we are satisfied that the complainants below were not, as a matter of right, entitled to injunctive relief, and that the existing injunction should not have been granted, even though we concede, for the purposes of the present decision, that the additional use to which the railway company proposed to devote its right of way was of such character as entitles the complainants to some additional compensation. It was undoubtedly a matter of much public concern to the citizens of Ft. Smith and the Indian Territory that vehicles and foot-passengers should be allowed to use the bridge as soon as possible, and that necessitated the use to a limited extent of appellant's right of way. When congress authorized the latter use (as we think it did) it was not incumbent on it to require compensation for the additional servitude to be paid in advance of its actual enjoyment by the public, even if some additional compensation is recoverable. *Cherokee Nation* v. *Railway Co.*, 135 U. S. 641–659, 10 Sup. Ct. Rep. 965. Furthermore, the appellees have a right of action at law to recover such additional compensation as they may be entitled to. *Railway Co.* v. *Twine*, 23 Kan. 591; *Railroad Co.* v. *Baker*, 45 Ark. 252; Lewis, Em. Dom. § 623, and citations. But the most important consideration bearing on the right to an injunction is the fact that, in the exercise of the authority granted to it by congress, the railway company does not propose to intrude upon the possession of any lands now occu-

pied by the appellees, or to do an act that will occasion injury to any considerable extent. The damages, if any, to which the appellees can lawfully lay claim, are certainly very small, if not purely nominal. We recognize the rule that legal rights of every description are entitled to protection, no matter how small their money value may be, but a court of equity is not bound to afford protection by an unconditional order of injunction, when adequate relief may be afforded in some other manner, whether the right involved is of great or little value. *Bassett* v. *Manufacturing Co.*, 47 N. H. 437; *McElroy* v. *Kansas City*, 21 Fed. Rep. 257; *Erie R. Co.* v. *Delaware, L. & W. R. Co.*, 21 N. J. Eq. 291, 292. We are of the opinion that the circuit court would have gone quite far enough in the case at bar, had it required the appellant to give a bond in a reasonable sum, not exceeding $2,500, conditioned to pay such damages, if any, as the complainants below might thereafter be adjudged to be entitled to, by any court of competent jurisdiction, in consequence of the alleged additional servitude imposed or threatened to be imposed on its right of way. Entertaining these views, the order of injunction appealed from is hereby vacated and annulled, the existing injunction is dissolved, and the cause is remanded to the lower court, with directions to take a bond for the protection of the appellees not exceeding the amount, and with conditions as above indicated.