DETERMINED IN

# THE SUPREME COURT

OF THE

# STATE OF UTAH.

FEBRUARY TERM, 1902.

SALT LAKE CITY WATER & ELECTRICAL POWER COMPANY, a Corporatoin, and JOSEPH GEOGHE-GAN, Receiver, Respondents, v. SALT LAKE CITY, a Municipal Corporation, and ANN AMANDA CAN-NON, Petitioners.

No. 1326.   (67 Pac. 791.)

**1. Certiorari: Remedy: Questions Considered on their Merits: What Questions Reviewable by.**
Where a petition for a writ of certiorari is filed in the Supreme Court, and an order to show cause why the writ should not issue is made, and the record of the trial court certified to the Supreme Court, the questions presented may be considered on their merits.

**2. Same.**
The Supreme Court, on certiorari, is not limited to the mere question whether the trial court has exceeded its jurisdiction, but may review errors of law affecting the substantial rights of the

(282)

Salt Lake City, etc., Co. et al. v. Salt Lake City et al.

parties, and determine if there is competent evidence to warrant the judgment; but it is not authorized to set the judgment aside by reason of a conflict in the evidence, or errors not affecting substantial rights.

3. **Same: Eminent Domain: Taking Possession before Condemnation: Validity of Statute.**
Revised Statutes 1898, section 3597, providing that the plaintiff in proceedings to condemn land for public purposes may be allowed by the court, upon filing a sufficient bond, conditioned to pay the adjudged value of the property and damages if condemned, to enter into possession of the property and do certain work, is not in conflict with Constitution, article 1, section 22, providing that private property shall not be taken or damaged for public use without just compensation, as the statute only relates to the occupation and use of the property pending the proceedings, and the payment for property condemned on final hearing is required by section 3604. BASKIN, J., dissenting.

(Decided February 11, 1902.) .

Original petition for a writ of certiorari by Salt Lake City against the Salt Lake City Water & Electrical Power Company to review the proceedings of the Third District Court, *Hon. C. W. Morse*, Judge, in an action pending between respondents and petitioners.

WRIT DENIED.

*Frank B. Stephens, Esq.*, city attorney, for petitioners; *Messrs. Richards & Varian* of counsel.

The statute authorizing possession is unconstitutional. Section 3597 of the Revised Statutes, which is relied upon to support the action of the court below, is unconstitutional and void, in so far as it authorizes the taking of possession of property upon the giving of a bond, because a bond is not compensation, nor the equivalent thereto, or to a fund providing compensation for the property so taken. The Constitution provides that: "Private property shall not be taken or

damaged for public use without just compensation." Art. 1, sec. 22.

The present Constitution of California, which went into effect July 4, 1879, in terms provides that just compensation shall be first made to or paid into court for the owner, before private property shall be taken or damaged for public use. Sec. 14, art. 1. Vol. 1, American Constitutions, p. 168.

But the original Constitution of 1849, omitting the word "damaged," is word for word with that of Utah. Sec. 8, art. 1. Vol. 1, Charters and Constitutions of the U. S. (Poore's Compilation), p. 195.

At an early day the Supreme Court of California gave a just and fair interpretation to the language of the Constitution, and, in a series of cases, uniformly held as contended here, with one exception. San Francisco v. Scott, 4 Cal. 114; McCann v. Sierra Co., 7 Cal. 121; McCauley v. Weller, 12 Cal. 500; Benzley v. Mountain Lake Co., 13 Cal. 306; 14 Cal. 106; 16 Cal. 153; 9 Cal. 592; 12 Cal. 76; 24 Cal. 427.

In the case of Fox v. The Western Pacific Railroad Company, 31 Cal. 538, the court held to the contrary, but in subsequent cases this case was overruled and the principles of the former cases reaffirmed; and the principles of the former cases were reaffirmed in Davis v. Railroad Co., 47 Cal. 517; Railroad v. Railroad, 47 Cal. 528; San Mateo W. Co. v. Sharpstein, 50 Cal. 285; Sanborn v. Belden, 51 Cal. 266; Vilhac v. Railroad, 53 Cal. 208.

In three of these last cases the court annulled, on certiorari, similar orders to that complained of here.

The statute does not authorize nor provide for the subjecting of this kind of property to the law of eminent domain, and the Constitution, by necessary implication, prohibits it.

A final and complete answer to the claim of the power company and the assumption of power by the court in the premises is found in the fact that this property of the city is

not subject to condemnation. It is provided by the Constitution that:

"No municipal corporation shall, directly or indirectly, lease, sell, alien or dispose of any waterworks, water rights or sources of water supply now, or hereafter to be owned or controlled by it; but all such waterworks, water rights and sources of water supply now owned or hereafter to be acquired by any municipal corporation, shall be preserved, maintained and operated by it for supplying its inhabitants with water at reasonable charges; provided, that nothing herein contained shall be construed to prevent any municipal corporation from exchanging water rights or sources of water supply for other water rights or sources of water supply of equal value and to be devoted in like manner to the public supply of its inhabitants." Art. 11, sec. 6.

Restrained by this enactment, the Legislature itself has no power to authorize the disposition of any waterworks, rights, or sources of supply of the city, which is required to maintain and operate the same for supplying its inhabitants with water. The Legislature can not change the use, nor can the city, and, of course, neither can authorize or permit any surrender, in whole or in part, of the control or regulation of the property.

It is idle to say that there is no attempt here to take the property of the city. By the complaint in the action, the claim of the plaintiff is presented. It seeks to acquire a permanent right of way and easement in the city's canal. The record shows that to do this for the purpose of the power company, it will be necessary to abandon the city's dam and headgates, together with a mile and a half or two miles of its canal, and turn over to the power company the control and regulation of the diversion and flow of the water from the river into the city's canal. If this is not an invasion of and taking of property, we are unable to conceive what would be considered so. Yet this was denied in argument in the court below. But, the city is charged, as a public trustee, with the

control and management of this property. This appears suffi-
ciently in the express language of the Constitution. But,
moreover, it is undoubtedly true that water rights and ease-
ments connected necessarily therewith, held, as here, for the
purpose of municipal uses, and supplying the inhabitants of
the municipality with water, are of such public utility and
necessity that they are held in trust for the use of the citizens.
Ogden City v. Bear L. & R. W. W. Co., 16 Utah 451; Meri-
wether v. Garrett, 102 U. S. 513; New Orleans v. Morris, 105
U. S. 602; Smith v. Mayor of Nashville, 7 L. R. A. 469;
Huron W. W. Co. v. Huron, 30 L. R. A. 844; R. S., sec.
206, pars. 15, 17, 18, 76.

The order permitting occupancy is made under section
3597, but the property which may be taken as subject to con-
demnation is defined and classified in section 3590. Under
this section, section 3597 could only refer to private property.
The opening statement of the section declares that "the pri-
vate property which may be taken under this chapter in-
cludes," followed by an enumeration thereof. What does it
include? First, all real property belonging to any person.
Second, lands belonging to the State, or to any county or
incorporated city or town, not appropriated to some public
cause. Third, property appropriated to public use; provided,
that such property shall not be taken unless for a more neces-
sary public use than that to which it has already been appro-
priated. Fourth, franchises. Fifth, rights of way for the
purposes mentioned in section 3588, with structures and im-
provements thereon, and lands used in connection therewith,
shall be subject to be connected with, crossed or intersected by
any other right of way or improvement or structure thereon.
Such rights of way shall also be subject to the limited use in
common with the owner thereon, when necessary.

In the above enumeration of property subject to con-
demnation, the property of municipal corporations, actually
devoted to a public use, is not found; on the contrary, the

distinction between such property and that held in a proprietary capacity is clearly made. Lands belonging to the State or to any county or incorporated city or town, not appropriated to some public use, are, by paragraph two, included in the enumeration of property which may be taken under the law. Here the Legislature makes a manifest distinction between property held by municipalities in their proprietary capacities and that which, being appropriated to a public use, is possessed in a governmental capacity. Could there have been used language more appropriate than this to indicate the legislative mind? The public use referred to here is a governmental or municipal use evidently. The word "lands," by express statutory definition, includes and means hereditaments, water rights, possessory rights and claims. Revised Statutes, sec. 2498, par. 10.

In its common and ordinary meaning it includes easements. Groggins v. Boston & A. Ry. Co., 155 Mass. 505; 30 N. E. 72.

*L. R. Rogers, Esq.*, and *Ogden Hiles, Esq.*, for respondents.

This application can not be allowed. The chapter of our code of civil procedure relating to certiorari was adopted, *in totidem verbis* from the code of California, and by repeated decisions of the Supreme Court of that State before the enactment of the statute by this State, the following interpretations and applications of it were established:

1. The writ of certiorari can not be made to do the office and functions of a writ of error. Coulter v. Stark, 7 Cal. 244; Central Pac. R. R. Co. v. Placer County, 46 Cal. 668; Whitney v. Board, 14 Cal. 499; People v. Dwinelle, 29 Id. 632; Will v. Sinkwitz, 39 Id. 570; People v. Burney, 29 Id. 459-460; Winter v. Fitzpatrick, 35 Id. 269; Morley v. Elkus, 37 Id. 454; People v. Elkins, 40 Id. 642; Barler v. San Fran-

cisco, 42 Id. 630; Central Pac. R. R. Co. v. Placer County, 43 Id. 365; Monreal v. Rues, 46 Id. 80; Hutchinson v. Superior Court, 61 Id. 119; Reynold v. County Court, 47 Id. 604; Sherer v. Superior Court, 94 Id. 354; Buckley v. Superior Court, 96 Id. 119; Sherer v. Superior Court, 96 Id. 653; History Company v. Light, 97 Id. 56.

2. The only thing which can be inquired of, is whether the court has exceeded its jurisdiction. People v. Dwinelle, 29 Cal. 632; People v. Johnson, 30 Id. 98; Sayers v. Superior Court, 84 Id. 645. And cases cited under the first paragraph.

3. When the jurisdiction of the court depends on the finding of a fact, and that fact is found by the lower court, that finding conclusively establishes the jurisdiction of that court on a proceeding in certiorari, and such finding can not be assailed on a writ of review. Farmers and Merchants' Bank v. Board of Equalization, 97 Cal. 318, 328; Sayers v. Superior Court, 84 Id. 642.

4. That the words in section 3630 of the Revised Statutes: "Has exceeded the jurisdiction of such tribunal," etc., and the words in section 3636: "Has regularly pursued the authority of such tribunal," etc., means the same thing. Central Pac. R. R. Co. v. Placer County, 46 Cal. 365; Bank v. Board of Equalization, 97 Id. 326.

5. That errors of law of the lower court will not be reviewed on certiorari even though there is no appeal. People v. Barney, 29 Cal. 460.

The petitioner declares that section 3597 is repugnant to the Constitution of Utah, because it provides for the taking of petitioner's property without compensation.

The constitutional enactment in some states is different from that of Utah; in some it is similar, and in others it is the same. Considering all the states in which it is the same or substantially so, there seems to be no doubt that the majority of the courts, and the weight of authority sustain the constitutionality of the legislation under notice. Lewis on

Eminent Domain, sec. 455-456, and cases cited in note. Cherokee Nation v. Kansas Railway Co., 135 U. S. 644-658; Sweet v. Rechel, 159 U. S. 380.

In the case of Backus v. Ford Union Depot Company, 169 U. S. 557, the doctrine of the above cases was approved on a writ of error to the Supreme Court of Michigan.

Within the meaning of the Constitution, the property, although entered upon pending the appeal, is not taken until the compensation is ascertained in some legal mode, and, being paid, the title passes from the owner. Such was the decision in Kennedy v. Indianapolis, 103 U. S. 599-604, where the Court construed a clause of the Constitution of Indiana declaring that no man's property "shall be taken or applied to public use without just compensation being made therefor," substantially the provision found in the national Constitution.

The decisions cited in the petitioner's brief are now of little worth either in Utah or in California, because they were made with relation to legislation different from that of Utah and from that now existing in California.

It is the certainty and adequacy of the provision for payment of the compensation, and not the time when it is to be paid, which determines the validity of the statute which permits occupation of the premises pending the suit.

The foregoing considerations seems to justify the conclusion that a statute such as ours is not within the interdiction of the Constitution without attempting to cite the numerous decisions from various states, which affirm the validity of statutes such as these; we will rest the point on the following citations: Cherokee Nation v. Railway Company, 135 U. S. 641; Sweet v. Rechel, 159 Id. 402; Backus v. Ford Street Union Depot Co., 168 Id. 568; Railway Company v. Payne, 49 Fed. 118; 4 U. S. App. 77; Kennedy v. Indianapolis, 103 U. S. 599; Lewis on Eminent Domain, secs. 456, 457, 458,

24 Utah—19

459; Mills on Eminent Domain, sec. 124 et seq., Secs. 3597 and 3604, Rev. Stat. Utah.

Section 6 of article 11 of the Constitution of Utah has no application. That section is an inhibition on the power of a municipal corporation to lease, sell, alien or dispose of waterworks, water rights or sources of water supply now or hereafter owned or controlled by it.

It does not seem to be any limitation on the State's power of eminent domain. The cases cited by petitioner hold merely that waterworks and other public property which has been dedicated to a public use, is held upon a public trust and can not be alienated by a municipality without the authority of an act of the Legislature.

This constitutional enactment seems to be a reaffirmance of that doctrine, and possibly an interdiction to the Legislature, against its giving any such authority to a municipal corporation.

A public street of a town is a thing of public necessity, and dedicated to a public use, but it is crossed and occupied and partially impeded in countless ways, by railroad tracks, telegraph and telephone poles and wires, with water ditches, public and private, and the numerous other instrumentalities of our commercial and industrial life. They all are cases where two or more public uses are from the necessities of the case made to stand together.

Mr. Chief Justice Shaw in an early case in the Supreme Judicial Court of Massachusetts, speaking for the court, said: "Both uses may stand together, with some interference of the later with the earlier."

And this court, following the unbroken current of authority on the point, has lately decided the same thing. Postal Tel & Cable Co. v. O. S. L. R. R., 23 Utah 474.

BARTCH, J.—The petitioners made application to this court for a writ of certiorari commanding one of the judges

of the district court of the Third judicial district to certify to the Supreme Court a complete transcript of the record and proceedings relating to the granting of a certain motion by the district court made in a certain action pending in that court. An order to show cause why the writ should not issue was made, and thereupon the record referred to was duly certified to this court, and the questions presented may thus be considered upon their merits.

It appears from the certified record that originally the petitioners, Salt Lake City et al., brought an action in that court against the respondents, Salt Lake City Water & Electrical Power Company et al., to quiet title to the water of the Jordan river, and to the right to store the same in the river and Utah Lake. The power company filed an answer in that action, and by counterclaim set up a right to the use, for power-creating purposes, of the water of the river, theretofore appropriated by the plaintiff city, by virtue of an appropriation in accordance with the statute. The power company also instituted condemnation proceedings to condemn the right to make connection with the canal of the city for the purpose of discharging the water, after use by the power company, through a flume across the river, into the canal opposite the respondent's power-creating plant. Thereafter, in these suits, the power company moved the court for permission to construct its flume and connect it with the canal pending the condemnation proceedings; and at the hearing of the motions the court entered an order permitting the power company and its receiver, pending the action, or until the further order of the court, to occupy the city's premises and make connection of the flume with the canal, and to discharge the water, after use by the power company, through the flume into the canal, upon executing and filing in the court a bond, to be approved by a judge thereof, in the sum of $5,000. This action of that court the petitioners now seek to have reviewed by means of the writ of certiorari, insisting that they have no other plain,

speedy, or adequate remedy. Their principal contention appears to be that the action of the court in the premises was erroneous and without its jurisdiction. The respondents insist that the writ of certiorari can not be used to perform the functions of a writ of error, and that the only thing which can be inquired of, under our statutes, by certiorari, is whether the inferior court has exceeded its jurisdiction. The same question here presented was before this court in the case of Gilbert v. Board, 11 Utah 378, 40 Pac. 264; and, upon a careful review of authorities and statutes, it was held, adversely to the contention of respondent herein, that on certiorari the appellate court may review the evidence to find if there is any proof to legally warrant the judgment or decision of the inferior tribunal, and whether it had jurisdiction, and whether its proceedings were had in accordance with law. It was there said: "The office of the common-law writ has been much enlarged by statute and decision in cases where there is no other proper remedy, and, in addition to determining questions of jurisdiction, errors in law affecting the substantial rights of the parties may now be corrected, and the testimony may be included in the return, and examined to determine whether there is competent evidence to warrant and justify the judgment of the inferior tribunal. Such enlargement of the writ, however, does not warrant the setting aside of a judgment when it is based on conflicting evidence, nor when there are errors in the proceedings in matters not material as affecting the substantial rights of the party, and not violating any rule of law or affecting the jurisdiction; but where there is an entire absence of proof to support the judgment or decision or order, or where the adjudication made is entirely unauthorized by the proof, it will be set aside and reversed, even though the inferior tribunal had jurisdiction of the person or subject-matter, and so where the proceedings culminating in the judgment are manifestly erroneous, and in violation of those prescribed by law.

The same rule applies to new jurisdictions created by statute, when the proceedings required are different from those of the common law. The examination of the evidence by the appel-. late court is not for the purpose of determining whether the preponderance thereof is on one side or the other, but to determine whether there is any testimony which will justify the judgment or finding of the inferior tribunal, as a legitimate inference, under the rules of law, from the facts proven, regardless of whether or not the appellate court would draw such in-. ference from such facts. And this power of review on certiorari is recognized as the settled law in England as well as in this country. The English courts have long exercised the power under this writ to review the record and proceedings of inferior tribunals, to determine questions of law arising therein, in cases where there was no other remedy for review." We have no disposition to depart from the doctrine of that case, and do not regard this question as any longer an open one in this jurisdiction.

The petitioners insist that section 3597, Revised Statutes 1898, which is relied upon to support the action of the court in the premises, is unconstitutional and void, in so far as it authorizes the taking of possession of property sought to be condemned upon the giving of a bond; claiming that a bond is not compensation, nor the equivalent thereto, or to a fund providing compensation for the property to be so taken. In that section it is provided: "The plaintiff may move the court or a judge thereof, at any time after the commencement of suit, on notice to the defendant, if he is a resident of the county, or has appeared in the action, otherwise by serving a notice directed to him on the clerk of the court, for an order permitting the plaintiff to occupy the premises sought to be condemned, pending the action, and to do such work thereon as may be required for the easement sought, according to its nature. The court or a judge thereof shall take proof by affidavit or otherwise, of the value of the

premises sought to be condemned and of the damages which will accrue from the condemnation, and of the reasons for requiring a speedy occupation, and shall grant or refuse the motion according to the equity of the case and the relative damages which may accrue to the parties. If the motion is granted, the court or judge shall require the plaintiff to execute and file in court a bond to the defendant, with sureties to be approved by the court or judge, in a penal sum to be fixed by the court or judge, not less than double the value of the premises sought to be condemned and the damages which will ensue from condemnation, as the same may appear to the court or judge on the hearing, and conditioned to pay the adjudged value of the premises and all damages in case the property is condemned, and to pay all damages arising from occupation before judgment in case the premises are not condemned, and all costs adjudged to the defendant in the action." It is claimed that these provisions are repugnant to section 22, article 1, Constitution, which reads: "Private property shall not be taken or damaged for public use without just compensation." Doubtless, under this provision of the Constitution, no private property can be taken or damaged, by right of eminent domain, for public use, without just compensation being made to the owner; but there is no requirement that compensation must actually precede occupation. It is evident, however, that some reasonable and adequate provision must be made for compensation before the party seeking to condemn has the right to take possession of the premises. Does, then, the portion of the statute above quoted violate the Constitution, in not making reasonable and adequate provision for compensation before occupancy? We think not. It will be noticed that the order provided for in this section of the statute simply permits the plaintiff in the suit to occupy the premises sought to be condemned, temporarily—"pending the action"—for the purpose of doing "such work thereon as may be required for the easement sought, according to its nature,"

and the bond is provided to secure to the owner the payment of the adjudged value of the property, and all damages in case the property is condemned, and all damages arising from occupation before judgment in case the property is not condemned, and the costs of the action.   But these provisions are not the only ones for compensation to be found in the statutes; for when section 3597 is read with 3604, Revised Statutes 1898, as it may be in determining the question whether the Legislature has made reasonable, certain, and adequate provision for compensation where property is sought to be condemned, it will be found that provision is made for the payment into court of the full value of the premises condemned as assessed by judgment upon trial *de novo,* and such further sum as may be required by the court as a fund to pay all further damages and costs which may be recovered in the proceedings, and all damages which the owner may sustain if the property, for any cause, be not finally taken for public use.   And from an examination of the various sections composing the chapter of the Revised Statutes on "Eminent Domain," it is apparent that, although the plaintiff in a proceeding to condemn may be permitted to occupy the premises for certain purposes pending the suit, before actual compensation has been made, the legal title to the property does not pass until the compensation has been paid.   It would thus seem that the several statutory provisions are reasonable and adequate to protect the rights of the owner.   Our conclusion, therefore, is that section 3597, Revised Statutes 1898, is not repugnant to section 22, article 1, Constitution, but is a valid enactment, and that with section 3604 the statutory provision for compensation is wholly sufficient to meet the requirements of the Constitution.

We are aware that the decisions of the several states respecting the question above determined are not all harmonious and are irreconcilable, but the decided weight of authority, where the constitutional provisions on this subject are similar to ours, doubtless sustains the conclusion reached herein.   In

section 456, 2 Lewis, Em. Dom., it is said: "In most states it is held that the making of compensation need not precede an entry upon the property, provided some definite provision is made whereby the owner will certainly obtain compensation." The Supreme·Court of Massachusetts, in Old Colony R. Co. v. Framingham Water Co., 153 Mass. 561, 27 N. E. 662, 13 L. R. A. 332, held that a statute empowering a town water company to take land, and providing that the damages therefor might be assessed as in the case of the laying out of highways, and that the company might be required to give security for such damages, "satisfactory to the selectmen of said town," failing which its rights should be suspended except for making surveys, made adequate provision for compensation for the land taken. In Cherokee Nation v. Southern Kansas R. Co., 135 U. S. 641, 10 Sup. Ct. 965, 34 L. Ed. 295, Mr. Justice Harlan, delivering the opinion of the court, said: "It is further suggested that the act of Congress violates the Constitution, in that it does not provide for compensation to be made to the plaintiff before the defendant entered upon these lands for the purpose of constructing its road over them. This objection to the act can not be sustained. The Constitution declares that private property shall not be taken 'for public use without just compensation.' It does not provide or require that compensation shall be actually paid in advance of the occupancy of the land to be taken. But the owner is entitled to reasonable, certain, and adequate provision for obtaining compensation before his occupancy is disturbed." And again he observed: "The plaintiff asks, what will be its condition, as to compensation, if, upon the trial *de novo* of the question of damages, the amount assessed in its favor should exceed the sum which may be paid into court by the defendant? This question would be more embarrassing than it is, if by the terms of the act of Congress the title to the property appropriated passed from the owner to the defendant, when the latter, having made the required deposit in court, is authorized

to enter upon the land pending the appeal, and to proceed in the construction of its road. But, clearly, the title does not pass until compensation is actually made to the owner. Within the meaning of the Constitution, the property, although entered upon pending the appeal, is not taken until the compensation is ascertained in some legal mode, and, being paid, the title passes from the owner." 2 Lewis, Em. Dom., secs. 457-462; Mills, Em. Dom., sec. 124; Nichols v. Railroad Co., 43 Me. 356; Railroad Co. v. Turner, 31 Ark. 494, 25 Am. Rep. 564; In re United States Com'rs, 96 N. Y. 227; Cushman v. Smith, 34 Me. 247; Rider v. Stryker, 63 N. Y. 136; Doe v. Railroad Co., 1 Ga. 524; Wellington & P. R. Co. v. Cashie & C. R. & Lumber Co., 116 N. C. 924, 20 S. E. 964; Walther v. Warner, 25 Mo. 277; Railway Co. v. Payne, 4 U. S. App. 77, 1 C. C. A. 183, 49 Fed. 114; Kennedy v. City of Indianapolis, 103 U. S. 599, 26 L. Ed. 550; Sweet v. Rechel, 159 U. S. 380, 16 Sup. Ct. 43, 40 L. Ed. 188; Backus v. Depot Co., 169 U. S. 557, 18 Sup. Ct. 445, 42 L. Ed. 853.

The remaining question of importance presented herein (the same relating to section 6, article 11, Const.) was passed upon in the case of Salt Lake City v. Salt Lake City Water & Electrical Power Co., 24 Utah 249, 67 Pac. 672, and requires no further discussion here.

We are of the opinion that the action of the court below in the premises was neither in excess of jurisdiction nor erroneous, but was in pursuance of authority, and the order in question must be affirmed, with costs. It is so ordered.

MINER, C. J., concurs.

BASKIN, J. (dissenting).—It appears that Salt Lake City many years ago constructed the canal in question, which extends from its connection with the Jordan river, a distance of over twenty miles, to said city, and acquired a vested right to divert from the river, and conduct through the canal, for

the use of the inhabitants of the city, a portion of the water of the river, and that both said canal and water have ever since been appropriated to that public use; that long after such appropriation and the acquisition of said vested right the Salt Lake City Water & Electrical Power Company filed in the recorder's office notices of appropriation, under which, as stated in my dissenting opinion in the case of Salt Lake City v. Salt Lake City Water & Electrical Power Co., 24 Utah 249, 67 Pac. 672, referred to in the majority opinion in this case, it wrongfully claims to have acquired the right to divert the water so appropriated to public use from the head of said canal, and conduct the same through a canal on the opposite side of the river to its power plant one and one-half miles below the head of the city's canal. In the case of Salt Lake City v. Salt Lake City Water & Electrical Power Co., before mentioned, the court below decreed that said company "is the owner and entitled to the right to convey to its said power plant, and use for the purpose of operating the same, all the waters of the river to which Salt Lake City is entitled by this decree, and to take into its canal, and to deliver back into the canal of the said Salt Lake City, after such use, all of said water, undiminished in quantity and unimpaired in quality, so long as said Salt Lake City shall continue to divert its water at its present point of diversion, and to use the same at its present place of use; provided, however, that the right of the said Salt Lake City Water & Electrical Power Company to so take and use the city's said water shall be effective only after said power company establishes by judgment of the court in an action at law its right to make connections with its flume and the city's canal, and shall have paid to said city any sum which may be awarded to said city by such judgment by way of damages therefor." After the inception of the alleged right of the electrical power company, and before the rendition of said decree, it instituted the pending action, not to condemn the city's right to divert the water, as afore-

said, at the head of its canal, but simply to establish the right
to extend its flume across the river, and connect it with the
city's canal at a point opposite to its power plant, and discharge
the water which the city by prior appropriation had acquired
a vested right to divert at the head of its canal. In the city's
answer it pleaded the facts showing its prior vested rights and
the prior diversion and appropriation of the canal and water to
said public use, and that, as said canal and water were already
being appropriated to a public use by the city, they were,
under existing laws, expressly exempted from condemnation,
and denied the right of the electrical power company to such
condemnation proceedings. Said company has not yet estab-
lished the right and paid the damages required by said de-
cree, yet the court below, without passing upon the issues
raised and deciding whether the said property of the city was
subject to condemnation or whether the electric power com-
pany is entitled, in the condemnation proceedings, to acquire
the right which it seeks to establish therein, granted the order
set out in the majority opinion.

The petitioners' counsel contend that the court, in grant-
ing said order, exceeded its jurisdiction. It is a fundamental
principle that no one shall be deprived of his property without
due process of law. It is stated in 10 Am. and Eng. Enc.
Law (2 Ed.), 289, 290, that "it is so well settled as to be con-
sidered elementary that the terms 'by due course of law' and
'by the law of the land,' are synonymous with 'by due process
of law;'" and numerous cases are cited in note 1, which fully
support that statement. In Black, Const. Law, section 151,
it is stated that "it is well settled by repeated decisions of the
courts that the two terms 'due process of law' and the 'law of
the land' are of exactly equivalent import." Judge Cooley,
in his work on Constitutional Limitations, at page 430, states
that: "Indeed, the language employed in the various Consti-
tutions is generally nearly identical, except that the phrase
'due process (or course) of law' is sometimes used, sometimes

'the law of the land,' and in some cases both; but the meaning is the same in every case." And on page 431, after quoting the definition of Mr. Webster given in the Dartmouth College Case, which is as follows: "By 'the law of the land' is most clearly intended the general law; a law which hears before it condemns; which proceeds upon inquiry and renders judgment only after trial"—he says: "The definition here given is apt and suitable as applied to judicial proceedings, which can not be valid unless they 'proceed upon inquiry' and 'render judgment only after trial.'" On page 434 he further states: "In judicial proceedings the law of the land requires a hearing before condemnation, and judgment before dispossession." The foregoing definition of the phrase "by the law of the land" is correct, and is also a correct definition of the term "by due process of law." "Property," as defined by Blackstone, "is the free use and enjoyment by a person of all of his acquisitions, without any control or diminution save only by the 'law of the land.'" 1 Bl. Comm., 138; 2 Bl. Comm., 2-15. It is "the right to possess, use, enjoy, and dispose of things." 2 Bouv. Law Dict. (Rev. Ed.). Property is the exclusive right of possessing, enjoying and disposing of a thing which is in itself valuable. Jones v. Van Zandt, 4 McLean 599, 601, Fed. Cas. No. 7501; Chicago & W. I. R. Co. v. Englewood Connecting Ry. Co., 115 Ill. 375-385, 4 N. E. 246, 56 Am. Rep. 173. In the case of Tripp v. Overocker, 7 Colo. 72, 1 Pac. 695, 697, the court, in its opinion, said: "Property is defined as being 'the right to possess, use, enjoy, and dispose of a thing.' The 'thing' mentioned does not always have a tangible or physical existence. It may be an easement, or anything else that can become the subject of private ownership. The proprietor of an irrigating ditch, whether upon his own premises or those of another, has a property ownership both in the ditch and the right of way therefor. And using or enlarging such ditch without the owner's consent is as much a taking or damaging of private property,

within the meaning of the Constitution, as would be appropriating the right of way therefor in the first instance." In section 31, Mills, Em. Dom., it is said: "The right to use property is the valuable feature of property. Property is the right to possess, use, enjoy, and dispose of a thing. Under the term 'property' is included not only the land owned, but also every right which accompanies ownership and is its incident. The right of using necessarily includes the right and power of excluding others from using the same property. The Constitution is intended to protect all the essential elements of ownership which make property valuable, and when an easement of any sort is taken in property a certain portion of the property is taken, and that taking requires compensation. Easements which owners have over the lands of others are property, and a taking or interference with the same is a damage for which compensation should be paid." In King v. Gotz, 70 Cal. 240, 11 Pac. 658, the court said that "in this State, as elsewhere, the mere possession of real property is constantly treated as property." In the able and exhaustive opinion in the case of Eaton v. Railroad Co., 51 N. H. 511, 12 Am. Rep. 147, it is said: "In a strict legal sense land is not property, but the subject of property. The term 'property,' although in common parlance frequently applied to a tract of land or a chattel, in its legal signification 'means only the rights of the owner in relation to it.' 'It denotes a right . . . over a determinate thing.' 'Property is the right of any person to possess, use, enjoy, and dispose of a thing.' Seldon, J., in Wynehamer v. People, 13 N. Y. 378, 433; 1 Bl. Comm. 138; 2 Aust. Jur. (3 Ed.), 817, 818. If property in land consists in certain essential rights, and a physical interference with the land substantially subverts one of those rights, such interference 'takes,' pro tanto, the owner's 'property.' The right of indefinite user (or of using indefinitely) is an essential quality or attribute of absolute property, without which absolute property can have no legal existence. 'Use

is the real side of property.' This right of user necessarily includes the right and power of excluding others from using the land. See 2 Aust. Jur. (3 Ed.), 836; Wells, J., in Walker v. Railway Co., 103 Mass. 10, 14; 4 Am. Rep. 509. From the very nature of these rights of user and of exclusion, it is evident that they can not be materially abridged without, *ipso facto*, taking the owner's 'property.' If the right of indefinite user is an essential element of absolute property or complete ownership, whatever physical interference annuls this right takes 'property,' although the owner may still have left to him valuable rights (in the article) of a more limited and circumscribed nature. He has not the same property that he formerly had. Then he had an unlimited right; now he has only a limited right."

It is clear, both on principle and from the authorities, that the order permitting the electrical power company, pending the action, to occupy the premises sought to be condemned, and to do such work thereon as may be required for the easement sought, and to connect its flume with the city's canal, permitted the taking of property; and as the issues controverting the right to condemn said premises were not decided before said order was granted, and are still pending for trial, the performance of the acts mentioned in the order would deprive the city of property belonging to it without due course of law, and therefore the court, in granting the order, exceeded its jurisdiction. If, upon the trial, these issues shall be decided in favor of the city, then the fact that the order permits the commission of a trespass will be emphasized.

Counsel for the electrical power company state in their brief that: "Within the meaning of the Constitution, the property, although entered upon pending the appeal, is not taken until the compensation is ascertained in some legal mode, and, being paid, the title passes from the owner." To support this contention they quote from the opinion in the case of Kennedy v. City of Indianapolis, 103 U. S. 599-604, 26 L.

Ed. 550, as follows: "On principle and authority the rule is, under such a Constitution as that of Indiana, that the right to enter on and use the property is complete as soon as the property is actually appropriated under the authority of law for a public use, but the title does not pass from the owner without his consent until just compensation has been made to him." As the majority opinion seems to favor that position, I have devoted much more space to the consideration of the question as to what property is, and what acts constitute its taking, than I otherwise would have done, for it seems to me that there can be no reasonable doubt that performance of the acts permitted by the order would be a taking of the city's property. To show the error of said contention, and the irrelevancy of the language quoted in its support to the facts in this case, it is only necessary to state that simply instituting an action to condemn property is not an actual appropriation of it, under the authority of law, to a public use. In condemnation proceedings such an appropriation may be authorized by and follow a judgment of condemnation, but can not precede it. It is self-evident that, as property is the right of a person to possess, use, enjoy, and dispose of something tangible and of value, to the exclusion of all others, any diminution of that right in a condemnation proceeding before a judgment condemning the property is rendered, when the right to condemn is in issue, is the taking of property in violation of article 1, section 7, of the Constitution, notwithstanding the owner is not divested of his title.

There is an irreconcilable conflict as to whether or not statutes which authorize the court to grant orders similar to the one in question are constitutional. I know of no case which holds that in an action to condemn property for public uses, when the right to condemn was in issue, that such an order is permissible. It is not so held in any of the cases cited by my associates.

As to whether, in an action to condemn property, when

the right to condemn is not disputed by the owner, or after a judgment of condemnation has been rendered, it is permissible under our statutes for the court to grant an order permitting the plaintiff, pending the action and the assessment of the damages, to take possession of the property sought to be condemned, and perform acts such as the order in question permits, I express no opinion, but simply hold that the statute is invalid only so far as it permits such an order before a judgment of condemnation is rendered, when, as in this case, the right to condemn is controverted by the owner.

As the court, in this case, in granting the order, exceeded its jurisdiction, the writ prayed for should be allowed.